**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Frank Edward POLOGRUTO,**
**Defendant–Appellant.**

**No. 90–2019**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 26, 1990.

[*] Judge Politz is recused, and therefore did not participate in this decision.

Kent A. Schaffer, Houston, Tex., for defendant-appellant.

James L. Turner, Paula C. Offenhauser, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before KING, GARWOOD and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant, Frank Edward Pologruto, appeals his sentence. Finding no error, we affirm.

## FACTS

Following two indictments on several drug counts, appellant pled guilty to an information charging possession of a firearm by a convicted felon. Pursuant to a plea agreement, he admitted he used the firearm to commit or attempt to commit robbery of another of chemicals described in the superseding indictment. The government agreed to dismiss the superseding indictment and not to recommend a sentence in excess of seven years. A Rule 11 hearing was conducted, appellant pled guilty and the court ordered a presentence investigation. The report of that investigation gave appellant a criminal history category of III and an offense level of 31 which produced a guidelines sentencing range of 135 to 168 months. Since this exceeded the statutory maximum of 120 months that maximum then became the recommended guideline sentence.

Approximately one month before sentencing, the district court made fact findings on which he would base his sentencing decision based on the presentence investigation report. Objections were filed. Af-

ter considering those objections, the district court calculated appellant's offense level at 28 and his criminal history category as III. This produced a recommended guidelines sentence range of 97 to 121 months. The district court departed downward from the guidelines to give effect to the plea agreement and sentenced Pologruto to 84 months. Pologruto appeals.

DISCUSSION:

■ Pologruto first challenges the district court's denial of an evidentiary hearing. Whether to grant an evidentiary hearing lies within the discretion of the trial judge. *U.S. v. Burch*, 873 F.2d 765, 767–68 (5th Cir.1989).

■ When a court is faced with specifically disputed facts, it must resolve them if they are used to determine the sentence. *See* Fed.R.Crim.P. 32(c)(3)(D) and *U.S. v. Hurtado*, 846 F.2d 995, 998 (5th Cir.), *cert. denied*, 488 U.S. 863, 109 S.Ct. 163, 102 L.Ed.2d 133 (1988). Fact findings at sentencing are reviewed under a clearly erroneous standard. *U.S. v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989).

■ Pologruto specifically disputes the government's allegation that he robbed James Earl Calvin, II, and pistol-whipped Calvin and Calvin's associate, James Lanning. In preparing his report, the probation officer interviewed Calvin and Lanning. In deciding what events occurred, the district court had before it that report and the reports of the investigating officers who observed that both Calvin and Lanning had sustained injuries.

Objections were filed and considered. There is no indication that there was "any dispute over facts material to his sentence that the court could not resolve without a full evidentiary hearing. Thus, it was within the court's discretion to deny the evidentiary hearing." *U.S. v. Mueller*, 902 F.2d 336, 347 (5th Cir.1990). At sentencing, the probation officer who prepared the PSI testified in detail concerning the pistol-whipping incident. The court gave counsel the opportunity to make oral objections then or written objections; counsel chose the latter. Thus appellant had a reasonable opportunity to rebut the government's facts and the hearing a month before sentencing satisfied § 6A1.3. *Mueller* at 347.

■ Pologruto next complains that he was wrongfully denied a reduction in base offense level for acceptance of responsibility. He claims that he "readily admitted that he acted wrongfully and that he felt genuine remorse for his conduct." This is insufficient.

In pertinent part, U.S.S.G. § 3E1.1 provides:

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

"[T]his Court must 'accept the findings of fact of the district court unless they are clearly erroneous.'" *U.S. v. Fields*, 906 F.2d 139, 142 (5th Cir.1990) (citing 18 U.S.C. § 3742(d) and *U.S. v. Mejia–Orosco*, 867 F.2d 216, 221 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989)).

■ The district court found that defendant had not accepted responsibility. The probation report states that Pologruto failed to admit to beating Calvin and claimed that the chemicals were not for use in the manufacture of methamphetamine, contrary to the statement in his stipulation. This does not indicate remorse for his actions. In addition, the mere fact that Pologruto pleaded guilty does not mandate the reduction for acceptance of responsibility. U.S.S.G. § 3E1.1(c); *Fields*, 906 F.2d at 142.

■ Pologruto's next argument is that the district court improperly used the guideline for robbery to determine his base offense level rather than the guideline for attempted robbery.

§ 1B1.2 provides that in the case of conviction by a plea of guilty containing a

stipulation that specifically establishes a more serious offense than the offense of conviction, the court should use the offense guideline section in Chapter Two most applicable to the stipulated offense.

The guidelines provision relating to unlawful possession of a firearm, § 2K2.1, (the offense of conviction) states:

> (c) Cross References
>
> (2) If the defendant used or possessed the firearm in connection with commission or attempted commission of another offense, apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense if the resulting offense level is greater than that determined above.

Indeed, the background note anticipates the use of the firearm statute in such a fashion:

> The firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if he used the firearm to rob a gasoline station. *Such prosecutions result in high sentences because of the true nature of the underlying conduct. The cross reference at § 2K2.1(c)(2) deals with such cases.*

U.S.S.G. § 2K2.1, comment. (backg'd.) (emphasis added).

The trial court then properly referred to § 2X1.1(b)(1), the provision dealing with attempted crimes. That section specifically states that if the conviction is for attempt, the base offense level should be decreased by three levels "unless the defendant completed all the acts the defendant believed necessary for successful completion of the offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control."

The PSI describes the material chain of events:

> To summarize this case concisely, James Calvin II was in the business of purchasing precursor chemicals with which to manufacture methamphetamine. He en-

listed Frank Pologruto's help in financing the purchase of some of these chemicals. During undercover negotiations with a confidential informant (CI), Calvin and Pologruto accepted delivery of the chemicals. Thereafter they had a disagreement concerning the possession and use of the chemicals, which had been stored in a mini-warehouse. Unknown to Pologruto, Calvin relocated the chemicals and Pologruto thereafter detained, pistol-whipped and injured Calvin and an associate in an attempt to learn the location of the chemicals. He also forced Calvin's associate to drive with him around Houston in an attempt to find the chemicals. During the time of the beatings and search for the chemicals, unknown to both Calvin and Pologruto, the chemicals and related laboratory equipment had been seized by DEA agents. Pologruto was arrested at Calvin's father's house following his unsuccessful search for the chemicals. . . .

PSI, 3.

The district court considered Pologruto's objections to this information then questioned the probation officer regarding the factual basis for it. The probation officer explained that he personally interviewed Calvin and examined affidavits of Calvin and Lanning and that reports of the investigating officers corroborated the pistol-whipping assertions of Calvin and Lanning. At the actual sentencing, the judge again acknowledged the existence of the factual dispute, discussed the evidence presented, and accepted the PSI account of the events.

■ The trial court's determination is not clearly erroneous. The court "was simply making a credibility determination, choosing to believe the testimony of others over that of [the defendant]." *U.S. v. Michael,* 894 F.2d 1457, 1460 (5th Cir.1990). Credibility choices lie within the province of the trier-of-fact. *Sarasti,* 869 F.2d at 807.

■ Pologruto's final argument is that the district "court erred by enhancing the robbery guidelines by permitting an upward adjustment of four levels, when the

robbery guidelines were used as an enhancement to § 2K2.1."

As discussed above, there was a proper application of the guidelines in this case. While somewhat confusing, the references from one section to another are authorized. U.S.S.G. § 1B1.2(a) refers to the section for the offense of conviction, in this case, § 2K2.1(c)(2). That firearm section then refers to the section on attempt, § 2X1.1(b)(1). Pologruto was properly found to fall within the exception to the attempt section because he was in the process of trying to get the chemicals by attempting a robbery when he was arrested. Therefore, § 2B3.1 was properly used to determine the base offense level. The adjustments under that section were properly applied. There was no error in the application of the guidelines.

AFFIRMED.