**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ernest Lee JENNINGS, Defendant– Appellant.**

**No. 92–6117.**

United States Court of Appeals, Eleventh Circuit.

May 26, 1993.

his official duties, in violation of 18 U.S.C. § 111(a)(1) (Count II). After a trial by jury, Jennings was acquitted on Count I but convicted on Count II.

Jennings appeals his conviction on the grounds that the district court (1) committed reversible error by refusing to quash the indictment, declare a mistrial or grant a continuance based on prosecutorial misconduct or improprieties regarding the grand jury that indicted him; (2) abused its discretion by failing to grant an evidentiary hearing regarding his motion to quash the indictment and dismiss prosecution on the ground of selective prosecution; and (3) committed reversible error by failing to give his proposed jury instructions. In addition, Jennings appeals his sentence on the ground that the district court erred in applying the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). While we find no merit in Jennings' arguments regarding his conviction, we hold that the district court erred in applying the Guidelines. Accordingly, we affirm Jennings' conviction but vacate his sentence and remand for resentencing.

John A. Lentine, Sheffield, Sheffield, Sheffield & Lentine, P.C., Birmingham, AL, for defendant-appellant.

Frank W. Donaldson, U.S. Atty., and Raymond L. Johnson, Jr., Asst. U.S. Atty., Birmingham, AL, for plaintiff-appellee.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellant Ernest Lee Jennings ("Jennings") was charged with (1) knowingly forcibly assaulting, resisting, impeding and interfering with Officer Kevin Lee Poole ("Poole") of the Bureau of Prisons while he was engaged in his official duties, in violation of 18 U.S.C. § 111(a)(1) (Count I); and (2) knowingly forcibly assaulting, resisting, impeding and interfering with Lieutenant Edwin L. Hughston ("Hughston") of the Bureau of Prisons while he was engaged in

## I. BACKGROUND FACTS

At the time of the offenses charged in the indictment, Jennings was incarcerated at the Federal Correctional Institute, Talladega, Alabama, serving a prison sentence for several convictions. Poole, a correctional officer, stopped Jennings and asked him to produce his identification card. Jennings responded that he did not have the card. Poole told Jennings to get the card and Jennings refused. Poole detained Jennings and called Hughston, who was Poole's supervisor. Hughston had basically the same conversation with Jennings and then told Poole to handcuff Jennings and take him to segregation. With Hughston watching, Poole began to handcuff Jennings, and Jennings struck Poole in the mouth with his right fist causing him to lose consciousness for a moment. Jennings then turned on Hughston and struck him twice. Additional correctional officers arrived and subdued Jennings.

As a result of the altercation, Poole had a three-quarter inch cut through his upper lip requiring a three-level suture and several other abrasions and cuts. Hughston also received multiple abrasions and cuts. Both men were treated at a local hospital and immediately released.

## II.  ANALYSIS

### A.  *Grand Juror*

During the trial the government disclosed the grand jury testimony of the single grand jury witness pursuant to the *Jencks* Act, 18 U.S.C. § 3500 (requiring government to disclose to criminal defendant any prior statement made by government witness that relates to the witness' trial testimony).  The disclosed portion of the grand jury proceeding contained a statement by an unidentified grand juror that he/she was a friend of Hughston.  After thanking the grand juror for that information, the Assistant United States Attorney promised to get back to the grand juror concerning his/her statement.  Although it is not part of the record, the government alleges that it did get back to the grand juror and that it asked additional questions about the relationship between the grand juror and Hughston.  The government did not disclose the additional information, however, because it was not related to the witness' trial testimony, and therefore was not *Jencks* material.

After Jennings received the disclosed portion of the grand jury proceeding, he moved the court to conduct an evidentiary hearing on the matter and to give him additional time to investigate; in the alternative he moved for a mistrial or to quash the indictment on the basis of prosecutorial misconduct.[1]  The district court denied the motion because Jennings failed to show how he was prejudiced by the relationship between the grand juror and Hughston.

Jennings contends that the district court erred in requiring him to show that he was prejudiced by the grand juror's relationship with Hughston because the district court refused to grant a continuance or conduct an evidentiary hearing to allow him to discover evidence of prejudice.  Jennings' argument is flawed because he has failed to consider the impact of the harmless error rule, Fed.R.Crim.P. 52(a).  We have applied the harmless error rule to similar facts in a habeas corpus case and have determined that a conviction on an indictment makes this type of grand juror problem harmless.  *Porter v. Wainwright,* 805 F.2d 930 (11th Cir.1986), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987).

In *Porter* a grand juror was related by marriage to the murder victims, but we held that even assuming *arguendo* that the grand juror's presence was error, the error was harmless because the defendant was convicted of the murders.  Following *United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 941–42, 89 L.Ed.2d 50 (1986), in which the Supreme Court held that a subsequent conviction on an indictment made harmless the error of having two witnesses testify before a grand jury simultaneously, we stated that while a grand jury's function is to prevent a defendant from having to defend against a crime for which there is no probable cause, a petit jury's guilty verdict establishes both probable cause and guilt.  *Porter,* 805 F.2d at 941.  We went on to say that the error of a grand juror knowing a victim was no different from the error held harmless by the Supreme Court in *Mechanik* of having two witnesses testify before a grand jury simultaneously.  *Id.* at 942.  Furthermore, we held that *Mechanik* controlled the issue of whether any error created by the prosecutor failing to reveal the grand juror's relationship with the victims was harmless.  *Id.*  We held that the conviction made harmless the government's failure to disclose the relationship between the grand juror and one of the victims and since the defendant could not prevail on this claim he was not entitled to an evidentiary hearing on the issue.  *Id.*

While the holding in *Porter* is directly applicable to this case and would dictate that Jennings' conviction renders harmless

---

1. Jennings had filed an earlier motion to dismiss or quash the indictment on the basis of selective prosecution.  The merits of that motion are discussed below.

the grand juror's relationship with Hughston and any prosecutorial misconduct related to the disclosure of the relationship, its holding may have been cast in doubt by the Supreme Court's decision in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988). In *Bank of Nova Scotia* the Court addressed the appropriate standard for determining whether to dismiss an indictment for nonconstitutional error prior to the conclusion of a trial. The Court adopted the standard articulated by Justice O'Connor in her concurring opinion in *Mechanik:* "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. at 2374 (quoting *Mechanik*, 475 U.S. at 78, 106 S.Ct. at 945–46 (O'Connor, J., concurring)). In *Mechanik* Justice O'Connor had stated that this standard rather than the majority's reliance on the defendant's subsequent conviction should be used to determine whether an error in grand jury proceedings is harmless. 475 U.S. at 76–78, 106 S.Ct. at 945.

█ We do not need to decide the impact of *Bank of Nova Scotia* on *Porter*, however, because even if we apply the *Bank of Nova Scotia* standard here the errors, if any, remain harmless. A grand jury need find only that there is probable cause to believe that a crime was committed and that the defendant was the party who committed the crime. *See United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). Applying the *Bank of Nova Scotia* standard, we must determine whether the grand juror's friendship with Hughston substantially influenced the grand jury's decision to indict or whether there is grave doubt that the decision to indict was free from the substantial influence of the relationship. The government presented overwhelming evidence to the grand jury for it to find probable cause to believe that Jennings committed the offenses against Hughston and Poole. The grand jury witness testified

that Jennings intentionally forcibly struck and injured Hughston and Poole, both federal officers engaged in their official duties at the time, and Jennings was not acting in self-defense. Therefore, we do not have a grave doubt that the grand juror's friendship with Hughston had a substantial influence on the decision to indict. Likewise, the government's failure to disclose the remainder of the colloquy with the grand juror is also harmless. Even if Jennings had this information, whatever it may be, his argument still fails because there was overwhelming evidence to support the grand jury's decision to indict.

Regardless of whether we apply the *Mechanik/Porter* conviction standard or the *Bank of Nova Scotia* substantial influence standard the errors, if any, regarding the grand juror's relationship with Hughston and the government's failure to disclose the remainder of the colloquy with the grand juror are harmless. Thus, the district court did not err in refusing to quash the indictment, declare a mistrial, grant a continuance or conduct an evidentiary hearing.

### B. *Selective Prosecution*

Three days before the trial was scheduled to begin, Jennings filed a motion to quash the indictment and dismiss prosecution on the ground of selective prosecution. Jennings requested an evidentiary hearing on his motion. The motion was filed forty-two days after the cutoff date for pretrial motions. Jennings attached no affidavits or other evidence to the motion. The district court denied the motion on the grounds that it was not timely and that it was insufficient to raise a claim of selective prosecution.

Jennings contends that the district court erred by refusing to grant him an evidentiary hearing regarding the motion. His contention is meritless, however, because of the two reasons given by the district court at the time it denied the motion.

█ First, the district court denied the motion because it was not timely. We review a denial of a motion to quash an

indictment on the basis that it was not timely under an abuse of discretion standard. *See Brooks v. United States,* 416 F.2d 1044, 1047 (5th Cir.1969), *cert. denied,* 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970).[2] Federal Rule of Criminal Procedure 12(c) requires that a defendant raise "defenses and objections based on defects in the indictment" prior to trial. Rule 12 further provides that if a defendant fails to raise this defense by the time set by the local court (forty-five days prior to trial in this case), or by the expiration of any extension given by the court, the court will consider the objections waived. Fed. R.Crim.P. 12(f). The court may grant relief from the waiver if the defendant shows cause. *Id.*

Jennings filed his motion forty-two days after the deadline for pretrial motions, so he waived his objection to the indictment and the district court could consider the motion only if Jennings showed cause for his delay. Jennings, however, made only a general allegation in his motion that he did not file it earlier because he did not have the knowledge on which to base the motion. He never alleged that he could not have discovered the facts on which he based his motion through the exercise of reasonable diligence. As a result, Jennings did not show cause for his delay, and the district court did not abuse its discretion in denying the motion as untimely filed.

■ A second basis for the district court's denial of the motion was that it did not state a claim for selective prosecution.

In order to prevail in a selective prosecution defense, a defendant must meet the heavy burden of (1) making a prima facie showing that he has been singled out for prosecution although other similarly situated persons who have committed the same acts have not been prosecuted; and (2) demonstrate that the government's selective prosecution was unconstitutional because actuated by impermissible motives such as racial or religious discrimination. An evidentiary

hearing is not automatically required; instead, the defendant must present facts "sufficient to create a reasonable doubt about the constitutionality of a prosecution...."

*United States v. Silien,* 825 F.2d 320, 322 (11th Cir.1987) (per curiam) (citations omitted) (upholding denial of motion to quash indictment on basis of selective prosecution and denial of evidentiary hearing on motion). "This heavy burden imposed upon defendants is indicative of the policy of restraint that derives from a respect for executive, prosecutorial discretion implicit in constitutional separation of powers." *United States v. Lichenstein,* 610 F.2d 1272, 1281 n. 4 (5th Cir.1980).

■ Here, Jennings presented only an offer of proof that an inmate would testify that he had assaulted a Mexican or Spanish officer at Talladega and was not federally prosecuted and that another officer at Talladega would testify that she had been assaulted by an inmate who was not prosecuted. Jennings' attorney stated that he expected the evidence to show that inmates were federally prosecuted for assault on prison officers only when the officers were white. This offer of proof is insufficient because Jennings failed to show that either situation involved "similarly situated persons who have committed the same acts." Jennings' conduct involved an assault on two correctional officers requiring both officers to receive medical treatment. Both incidents fail to help Jennings' selective prosecution claim because he did not allege that they were of the same severity. *See Owen v. Wainwright,* 806 F.2d 1519, 1524 (11th Cir.1986) (holding that habeas petitioner failed to make claim of selective prosecution because he did not allege that prior offenders' crimes "approached the magnitude or recklessness" of his conduct). In addition, the alleged incident involving the female prison guard is unavailing to Jennings because he is attempting to show that his prosecution had a race based motive and he failed to allege the race of

---

**2.** Decisions of the former Fifth Circuit, handed down prior to October 1, 1981, are binding precedent in this circuit. *Bonner v. City of*

*Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

either the officer or the inmate. As a result, the statements of the two witnesses are not sufficient to create a reasonable doubt as to the constitutionality of Jennings' prosecution. We conclude that the district court did not err in denying Jennings' motion to dismiss or quash the indictment on the basis of selective prosecution or in refusing to grant an evidentiary hearing on the motion.

### C. *Jury Instructions*

■ At the end of the trial, Jennings requested two jury instructions regarding the amount of force a correctional officer may use and the scope of a correctional officer's employment. The district court rejected both instructions as improper and refused to give them. Jennings now argues that the district court erred in refusing to give the instructions.

A trial court's refusal to give a requested instruction is reversible error only if (1) the substance of the instruction was not covered in an instruction given, (2) the requested instruction is a correct statement of the law, (3) the requested instruction deals with an issue properly before the jury, and (4) the party seeking the requested instruction suffered prejudicial harm by the court's refusal.

*United States v. Hooshmand,* 931 F.2d 725, 734 (11th Cir.1991). Since these four elements are in the conjunctive, if the requesting party cannot show any one of the elements, then the district court did not commit reversible error. *See Id.*

■ Jennings argues first that the district court erred by refusing to give his requested charge number eight, which states:

I charge you ladies and gentlemen of the jury as to the following rule and regulation of the Bureau of Prisons:

That prior to any calculated use of force, the ranking custodial official (ordinarily the captain or shift lieutenant), a designated mental health professional, and others shall confer and gather pertinent information about the inmate and the immediate situation. Based on their assessment of that information, they shall identify a staff member(s) to attempt to obtain the inmate's voluntary cooperation and, using the knowledge they have gained about the inmate and the incident, determine if force is necessary.

I further charge you that staff of the Bureau of Prison staff shall use only that amount of force necessary to gain control of the inmate.

(28 CFR Ch. V, § 552.21(c), § 552.22(a) (7–1–91 ed.)).

Jennings' argument fails because the first part of the requested instruction does not deal with an issue that was properly before the jury and the second part of the instruction was covered in an instruction given by the district court.

The first part of the instruction, dealing with the use of calculated force, does not apply to the facts of this case. The federal regulation upon which Jennings based this part of the instruction states that the requirement for a conference and an attempt to secure voluntary cooperation applies "in situations where an inmate is in an area that can be isolated (e.g. a locked cell, a range) and where there is no immediate, direct threat to the inmate or others." 28 C.F.R. § 552.20(c). Jennings was in an open area near the dining hall with many other inmates present; thus, the provision does not apply here.

Furthermore, the second part of the instruction dealing with the amount of force a staff member may use to gain control of an inmate was covered by the instruction given by the district court: "[s]uch correctional officers are prohibited from using unnecessary force against prison inmates. Any force used by a correctional officer must be reasonable given all the surrounding circumstances." R4–419. The given instruction correctly stated the law regarding the amount of force a staff member may use against an inmate.

■ Jennings also contends that the district court committed reversible error by refusing to give his requested charge number nine, which states:

I further charge you ladies and gentlemen of the jury that you may consider whether the alleged victims in this case were in compliance with the rules and regulations of the Bureau of Prisons that I have previously instructed you on in considering whether the alleged victims were acting outside or beyond the reasonable scope of their employment.

Jennings is mistaken in his contention because this requested instruction is not a correct statement of the law. A correctional officer may commit what is later determined to be an illegal act in handling a prisoner but still may be acting within the scope of his employment. *United States v. Cunningham,* 509 F.2d 961, 963 (D.C.Cir. 1975). The test is not whether the officer is abiding by laws and regulations in effect at the time of the incident, but whether the officer is on some "frolic of his own." *See, e.g., United States v. Kelley,* 850 F.2d 212, 214 & n. 6 (5th Cir.), *cert. denied,* 488 U.S. 911, 109 S.Ct. 267, 102 L.Ed.2d 255 (1988); *Cunningham,* 509 F.2d at 963. A prisoner may not forcibly resist an officer, even if the officer is committing an illegal act, unless the officer is outside the scope of his employment. *Cunningham,* 509 F.2d at 963.

Since neither of Jennings' requested jury instructions meet the criteria for determining reversible error for failure to give a jury instruction, the district court is due to be affirmed on this issue.

### D. *Sentence*

The district court sentenced Jennings to the statutory maximum thirty-six month sentence for assault of a federal official, 18 U.S.C. § 111(a), to run consecutively with his existing sentences.[3] The district court classified the offense as aggravated assault under U.S.S.G. § 2A2.2, resulting in a base offense level of fifteen, because it found that even though Hughston suffered only bodily injury, Poole suffered serious

bodily injury. Although Jennings was acquitted of assaulting Poole, the district court determined that Poole's injuries could be considered for sentencing purposes because the court was satisfied by a preponderance of the evidence that Jennings assaulted Poole. The district court then added four points to the base offense level under U.S.S.G. § 2A2.2(b)(3)(B) because the "victim," Poole, suffered serious bodily injury. The district court also increased Jennings' base offense level three points for assaulting an official victim in a manner creating a substantial risk of serious bodily injury under U.S.S.G. § 3A1.2. The district court calculated a criminal history category of five for Jennings and a total offense level of twenty-two. While this results in a sentence of seventy-seven to ninety-six months under the Guidelines, the district court applied the statutory maximum sentence under 18 U.S.C. § 111(a) of thirty-six months.[4]

Jennings argues that the district court committed error by classifying his offense as aggravated assault under U.S.S.G. § 2A2.2 and increasing his base offense level for a victim's serious bodily injuries merely because of Poole's injuries. He contends that Poole's injuries were not serious, but, even if they were, his base offense level should not be increased based on an assault for which he was acquitted. Jennings further argues that the district court erred in increasing his base offense level for a substantial risk of serious bodily injury to an official victim under § 3A1.2(b).

▇ We review a district court's findings of fact during sentencing for clear error, 18 U.S.C. § 3742(e), and we review *de novo* the district court's application of the Guidelines to the facts, *United States v. Kirkland,* 985 F.2d 535, 537 (11th Cir. 1993); *United States v. Shriver,* 967 F.2d 572, 574 (11th Cir.1992).

---

**3.** Because Jennings was sentenced on February 11, 1992, the district court applied the Sentencing Guidelines contained within the November 1991 *Guidelines Manual.*

**4.** Guideline § 5G1.1(a) states that "[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."

■ Guideline § 1B1.2(a) requires that a court first "determine the offense guideline section ... most applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." We have determined that "offense of conviction" refers "only to the conduct charged in the indictment for which the defendant was convicted," while "offense conduct" is broader and "refers to the totality of the criminal transaction in which the defendant participated and which gave rise to his indictment, without regard to the particular crimes charged in the indictment." *United States v. Ignancio Munio*, 909 F.2d 436, 438 n. 2 (11th Cir.1990); *United States v. Scroggins*, 880 F.2d 1204, 1209 n. 12 (11th Cir.1989). Thus, the appropriate guideline section is determined solely by conduct charged in the indictment for which the defendant has been convicted.

Here, Jennings was convicted of assaulting Hughston under 18 U.S.C. § 111(a), so only that assault may be considered in determining the appropriate guideline section. The two possible guideline sections for assault of a federal officer under 18 U.S.C. § 111(a) are U.S.S.G. § 2A2.2 (Aggravated Assault) and § 2A2.4 (Obstructing or Impeding Officers). Under the Guidelines " '[a]ggravated assault' means a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (*i.e.*, not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony," U.S.S.G. § 2A2.2, comment. (n. 1), while obstructing or impeding an officer merely involves "a victim [who] was a governmental officer performing official duties," U.S.S.G. § 2A2.4, comment. (n. 1). The assault against Hughston involved none of the three bases for aggravated assault, so that guideline section cannot apply for the assault against Hughston. Guideline § 2A2.4 (Obstructing or Impeding Officers) is the applicable guideline section because at the time of the assault Hughston was "a governmental officer performing official duties."

■ The next step in determining the sentence is to determine the guideline range by considering relevant conduct, if appropriate. U.S.S.G. § 1B1.3. While we have held that relevant conduct includes "evidence of the defendant's conduct relating to counts on which the defendant was indicted but acquitted at trial," *United States v. Averi*, 922 F.2d 765, 765 (11th Cir.1991) (per curiam); *cf.* U.S.S.G. § 1B1.3(a) comment. (n. 1 & backg'd), this conduct can be considered "unless otherwise specified [only when determining] (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics, (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three," U.S.S.G. § 1B1.3(a).

The cross reference provision for § 2A2.4 (Obstructing or Impeding Officers) states that "[i]f the defendant is convicted under 18 U.S.C. § 111 and the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." U.S.S.G. § 2A2.4(c)(1). Since § 1B1.3(a) requires that relevant conduct be applied to determine cross references "unless otherwise specified," we must decide whether this cross reference requires the application of relevant conduct or specifies otherwise. If the cross reference specifies that only conduct related to the offense of conviction can be used to determine whether the cross reference applies, the district court erred in considering Jennings' conduct related to Poole in applying § 2A2.2 (Aggravated Assault).

While other circuits generally have held that conduct for which the defendant was acquitted must be considered when a relevant cross reference does not specify that such conduct should be excluded,[5] we could find no case from this or any other circuit

---

5. *See United States v. Kussmaul,* 987 F.2d 345 (6th Cir.1993) (holding that cross reference in § 2G3.1, Importing, Mailing, or Transporting Obscene Matter, to § 2G2.2 for an "offense involv[ing] transporting, distributing, receiving, possessing, or advertising to receive material involving the sexual exploitation of a minor" applies where defendant was acquitted of ordering child pornography through the mails); *United States v. Concepcion,* 983 F.2d 369, 385–89 (2d Cir.1992) (holding that court must apply cross references in § 2K2.1, possession of fire-

in which a court considered whether a cross reference fell within the "unless otherwise specified" exception to the requirement in § 1B1.3 that relevant conduct be considered. Since the cross reference in § 2A2.4 requires conviction and then states "and the conduct constituted aggravated assault," it seems plain that "conduct" refers to conduct related to conviction. Therefore, this cross reference falls within the "unless otherwise specified" exception, and a court cannot consider relevant conduct in deciding whether to apply it. Because the district court could not consider Jennings' conduct regarding Poole and Jennings' conduct regarding Hughston does not satisfy any of the three bases for aggravated assault, the district court erred in applying § 2A2.2 (Aggravated Assault). Thus, the district court also erred in applying the four point increase in § 2A2.2(b)(3)(B) for serious bodily injury to a victim of aggravated assault because § 2A2.2 itself is inapplicable.[6]

Furthermore, the district court erred in applying the increase for an assault against an official victim, § 3A1.2(a), for two reasons. First, rather than § 2A2.2 (Aggravated Assault), the district court should have applied § 2A2.4 (Obstructing or Impeding Officers), and Application Note 1 to § 2A2.4 states that "[t]he base offense level reflects the fact that the victim was a governmental officer performing official duties. Therefore, do not apply § 3A1.2 (Official Victim) ... " Second, the official victim increase applies only when the offense of conviction was motivated by the victim's status as a law enforcement or corrections officer, U.S.S.G. § 3A1.2(a), or when the defendant commits an assault against a law enforcement or corrections officer during the course of an offense or

the flight therefrom creating a risk of serious bodily injury, U.S.S.G. § 3A1.2(b). The district court here applied the increase for the latter reason. Application Note 5, however, states that for the second ground to apply the assault must occur while "in the course of, or in the immediate flight following, *another* offense." U.S.S.G. § 3A1.2, comment. (n. 5) (emphasis added). Here there was no other offense, so the increase cannot apply.

Because the district court erred in sentencing Jennings under U.S.S.G. § 2A2.2 and § 3A1.2, we must vacate Jennings' sentence and remand this case for resentencing.

### III. CONCLUSION

We find no error in the district court's refusal to quash the indictment, declare a mistrial or grant a continuance based on prosecutorial misconduct and/or improprieties regarding the grand jury that indicted Jennings. Nor did the district court abuse its discretion in refusing to grant an evidentiary hearing regarding Jennings' motion to quash the indictment and dismiss prosecution on the grounds of selective prosecution. The district court's refusal to give Jennings' proposed jury instructions was also correct. Accordingly, we affirm Jennings' conviction. Nonetheless, because we hold that the district court erred in applying the Guidelines, we vacate Jennings' sentence and remand for resentencing.

AFFIRMED in part, VACATED in part and REMANDED.

---

arms by previously convicted felon, and § 2K2.2, possession of unregistered firearms, which specified that a court apply higher offense levels "[i]f the defendant used the firearm in committing or attempting another offense," despite defendant's acquittal of narcotics conspiracy and use of a firearm in relation to narcotics trafficking when the court is persuaded by a preponderance of the evidence that defendant used firearm in connection with narcotics conspiracy); *United States v. Masters,* 978 F.2d 281, 284–85 (7th Cir.1992) (holding that the court could consider evidence of defendant

murdering his wife as underlying racketeering activity under § 2E1.1(a)(2) even though defendant was not convicted of murder because the guideline "speaks of the underlying *activity* and not an underlying *conviction* ").

**6.** Since the guideline for aggravated assault does not apply in this case, we need not reach the issue of whether the district court properly considered Poole's injuries when applying the increase for injuries to the "victim" under § 2A2.2(b)(3).