UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-8387
Summary Calendar
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                versus

JOHN SIMON GONZALES,

                              Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas
_____

(July 12, 1993)

Before GARWOOD, JONES and EMILIO M. GARZA Circuit Judges.

GARWOOD, Circuit Judge:

Appellant, Juan "John" Simon Gonzales (Gonzales), was convicted, on his guilty plea pursuant to a plea agreement, of one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). The district court sentenced Gonzales to a term of imprisonment of 120 months, a 3 year term of supervised release, and imposed a $50,000 fine and a $50 special assessment. Gonzales now appeals his sentence.

**Facts and Proceedings Below**

The evidence submitted in support of Gonzales's sentence

revealed the following. On February 28, 1991, Gonzales purchased a .38 caliber Rossi Model 88 revolver (the Rossi) at a retail store in Austin, Texas. In order to purchase the weapon, he falsified the required ATF form by stating that he had never been convicted of an offense punishable by a term of imprisonment of more than one year.[1] Gonzales gave the Rossi to his brother, Marcelo Gonzales (Marcelo), who was not old enough to purchase a weapon. Gonzales purchased the firearm for Marcelo because Marcelo had been assaulted and could use the weapon for protection.

Between February 28 and March 5, 1991, someone stole a stereo system from Marcelo's car. Gonzales, his stepbrother David Madrigal (Madrigal), and Marcelo believed that the culprit was one Robert Bettelyoun (Bettelyoun). Gonzales and Madrigal concocted a plan to get back Marcelo's stereo and to teach Bettelyoun a lesson. On March 5, 1991, they drove Marcelo to his apartment in order for him to get the Rossi. The three brothers then waited at Bettelyoun's residence for him to arrive. Around midnight, Bettelyoun returned from work, and the three brothers kidnapped him at gunpoint, and forced him into a car which Madrigal drove. Marcelo sat in the front, and Gonzales and Bettelyoun sat in the back. During the kidnapping, Madrigal carried a nickel-plated .380 pistol and Marcelo carried the Rossi.[2]

---

[1]    Gonzales had previously been convicted of the separate offenses of burglary of a vehicle and aggravated assault with a deadly weapon. Both offenses were felonies punishable by a term of imprisonment of more than one year.

[2]    Madrigal also had a .22 with a 27-round clip in the backseat of the car, and a .12-gauge shotgun in the trunk.

While driving, Madrigal relinquished his pistol to Gonzales who leveled the gun barrel against Bettelyoun's forehead and told him that he better reveal the whereabouts of Marcelo's stereo system. Gonzales then took Bettelyoun's necklace, watch, and money from his wallet. Madrigal drove for about thirty minutes before pulling into a rest area. He and Marcelo exited the car, as Gonzales, identified by Bettelyoun as "the big guy," interrogated him about the location of the stereo system. Marcelo and Madrigal then reentered the car, and were also questioning Bettelyoun, when a highway patrolman drove up behind Madrigal's car. The officer instructed the occupants to exit the car, and as Madrigal stepped out from the vehicle, he shot and killed the officer. The three brothers then returned Bettelyoun to his home. Madrigal sought to flee to Mexico but he was apprehended the next day in San Antonio, Texas, after a gun battle with a police officer.

On September 3, 1991, a grand jury returned a two-count indictment against Gonzales for making a false statement in order to purchase a firearm in violation of 18 U.S.C. §§ 922(a)(6), 924(a)(1)(B) (Count One); and with receipt of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count Two). Both counts concerned Gonzales's purchase of the Rossi on February 28, 1991. On March 24, 1992, Gonzales entered into a plea agreement whereby in return for entering a guilty plea to Count Two, the government would dismiss Count One.

The probation officer then prepared the Presentence Report (PSR), and computed Gonzales's sentence according to the sentencing

3

guidelines.[3]   The officer calculated Gonzales's base offense initially from U.S.S.G. § 2K2.1 which is the guideline for receipt of a firearm by a convicted felon.  The officer then applied the cross reference under section 2K2.1(c)(1) which requires the application of section 2X1.1 if the firearm was used or possessed in connection with the commission or attempted commission of another offense.  Section 2X1.1(a) mandates that the base offense level is derived from "the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." *Id.* Here, the probation officer determined that Gonzales's substantive offense was kidnapping.  Under section 2A4.1, the section covering kidnapping, the base offense level is twenty-four.  Using twenty-four as a benchmark, the officer then included a two-level increase for use of a dangerous weapon as provided for by section 2A4.1(b)(3).  He then deducted one level since the kidnapped victim was released within twenty-four hours as provided for in section 2A4.1(b)(4).  The officer then applied section 3A1.2(b) which provided a three-level enhancement if a law enforcement officer was assaulted in a manner creating a substantial risk of serious bodily injury.  Finally, the officer gave Gonzales a two-level downward adjustment for acceptance of responsibility under section 3E1.1(a).  Therefore, Gonzales's total offense level was twenty-six.  With a criminal history category of V, the sentencing range was 110-137

---

[3]    The applicable version of the sentencing guidelines is the one in effect on July 10, 1992, the date on which Gonzales was sentenced, 18 U.S.C. § 3553(a)(4), namely the 1991 edition of the Federal Sentencing Guidelines Manual.

months.

Gonzales objected to the PSR, arguing that the probation officer should not have used the cross reference to section 2X1.1; that if this section were used, he should not have been charged with a two-level increase for use of a deadly weapon per section 2A4.1(b)(3); and that he should not have received a three-level increase for assaulting a law-enforcement officer per section 3A1.2(b). The district court overruled his objections, adopted the PSR's recommendations, and sentenced Gonzales to 120 months, the statutory maximum under 18 U.S.C. § 924(a)(2). The district court also sentenced him to a three-year term of supervised release, and imposed a $50,000 fine and a $50 special assessment. Gonzales now appeals his sentence.

## Discussion

Gonzales raises basically the same three issues on appeal as he did below. First, he complains that the district court improperly applied the cross reference section 2K2.1(c)(1). Also, Gonzales argues that the district court improperly enhanced his base offense level for assaulting a law enforcement official under section 3A1.2(b). Finally, Gonzales argues that he was placed in double jeopardy when the district court enhanced his base offense level for use of a deadly weapon during the kidnapping.

Gonzales's complaints are based on the district court's allegedly improper application of the sentencing guidelines. This court will "uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous." *United States v.*

5

*Sarasti*, 869 F.2d 805, 806 (5th Cir. 1989); *see* 18 U.S.C. § 3742(e)(2).   We review *de novo* the district court's legal conclusions with respect to the guidelines.  *Id.; United States v. Suarez*, 911 F.2d 1016, 1018 (5th Cir. 1990).

A.   *Cross Reference Section 2K2.1(c)(1) and Relevant Conduct*

Gonzales first argues that his base offense level should not have been calculated from the guideline concerning the offense of aggravated kidnapping but from the guideline for the offense with which he was chargedSQreceipt of a weapon by a convicted felon.[4] He contends that the cross reference in section 2K2.1(c)(1) to section 2X1.1 is limited by section 1B1.3(a) concerning the general definition of relevant conduct.  According to Gonzales, section 1B1.3(a) dictates that a cross reference can be used only for acts committed during, or reasonably foreseeable to, the offense of conviction.[5]  Therefore, because the receipt of the Rossi and the kidnapping were not part of the same scheme or plan, and the Rossi

---

[4]    Under the guideline for the receipt of a firearm by a convicted felon, without cross referencing to any other guideline, the base offense level is twelve.  U.S.S.G. § 2K2.1(a)(7).  This application would result in a significantly shorter sentence than the one assessed.

[5]    Section 1B1.3(a) provides in pertinent part that:

"Unless otherwise specified . . . cross references in Chapter Two . . . shall be determined on the basis of the following:

(1)  all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction . . . ."  *Id.*

6

was purchased with no intent for it to be used in the latter offense, the presence of the Rossi during the aggravated kidnapping was merely "fortuitous" and not foreseeable.

We agree that the aggravated kidnapping was not relevant conduct in connection with Gonzales's charged offense of receipt of the Rossi. However, we disagree with the assertion that in this case section 1B1.3 restricts the application of section 2K2.1(c)(1).

Section 1B1.3 applies to cross references in Chapter Two "[u]nless otherwise specified." U.S.S.G. § 1B1.3(a). "Since § 1B1.3(a) requires that relevant conduct be applied to determine cross references 'unless otherwise specified,' we must decide whether this cross reference requires the application of relevant conduct or specifies otherwise." *United States v. Jennings*, 991 F.2d 725, -- (11th Cir. 1993). Section 2K2.1(c)(1) provides in pertinent part:

> "If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, applySQ
>
> > (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above . . . ." *Id.*

The language of section 2K2.1(c)(1) in no way suggests that it is limited to the offenses that the defendant intended to commit upon receipt or possession of the particular weapon in the charged offense. Rather, the broad language of section 2K2.1(c)(1), particularly its unlimited references to "another offense,"

7

indicates that it is not restricted to offenses which would be relevant conduct but embraces all illegal conduct performed or intended by defendant concerning a firearm involved in the charged offense.[6] Therefore, the district court did not err in applying section 2K2.1(c)(1) irrespective of the relevant conduct strictures

---

[6] We note that section 2K2.1(c)(1) literally includes not only offenses in which the firearms specified in the charged offense were used or possessed, but "any" weapons used or possessed in the other offenses. *Id.* It appears to us that these firearms must at least be related to those in the charged offense. If the word "any" were read literally, section 2K2.1(c)(1) would apply even though the weapon involved in the other offense had absolutely no relation to that specified in the charged offense. Such a reading would have section 2K2.1(c)(1) apply, for example, to a weapon used by the defendant in a robbery committed months before he ever acquired the weapon specified in the offense of conviction. The overall context of section 2K2.1, however, militates against such an expansive reading of "any firearm." Thus, section 2K2.1(b)(4), which provides for a two level increase if "any firearm was stolen," obviously is not intended to apply to firearms wholly unrelated to the charged offense. We do not suggest that the "firearm" referenced in section 2K2.1(c)(1) would not include a firearm which though not specified in the count of conviction was nevertheless part of its relevant conduct. However, we need not (and do not) decide these questions because the district court here specifically found that Gonzales possessed the Rossi in the kidnapping and Gonzales does not challenge this finding on appeal.

The district court noted that although Marcelo held the Rossi during the kidnapping and Gonzales never touched it, the gun was only a foot and a half away from Gonzales, and was therefore within his easy reach during the offense, and was constructively possessed by him. The evidence also showed Gonzales was the leader of the group. We would further add that the district court's finding was not erroneous because the undisputed facts show that Gonzales, Madrigal, and Marcelo acted together as co-conspirators in the kidnapping; and Marcelo's possession of the Rossi is thus imputed to Gonzales. *See United States v. Pinkerton*, 66 S.Ct. 1180 (1946); *United States v. Elwood*, No. 92-3235, 1993 WL 195348, at *4 (5th Cir. June 9, 1993) (upholding determination that defendant was liable as a co-conspirator for the possession/use of firearms by other co-conspirators).

contained in section 1B1.3.[7]

*B.  Enhancement for Assault of a Law Enforcement Official*

Gonzales contends that even if the aggravated kidnapping guideline is the proper one for calculating his base offense level, he still should not have been given a three-level increase under section 3A1.2(b) for assaulting a law enforcement official in a manner creating a substantial risk of serious bodily injury.[8]  He contends, in a slight variation from his first argument, that the provisions of Chapter Three of the guidelines are subject to the relevant conduct restrictions of section 1B1.3.  Gonzales rightly points out that section 3A1.2(b) is applicable only if the harm to the law enforcement official occurred "during the course of the offense."  *Id.*  Gonzales contends that the "offense" referred to is the offense of conviction and since the kidnapping was not related to the receipt of the Rossi, the assault of the police officer covered in section 3A1.2(b) does not concern relevant conduct.

We agree that section 3A1.2(b) is subject to the relevant conduct restrictions of section 1B1.3.  *See United States v. Kleinebreil*, 966 F.2d 945, 954 (5th Cir. 1992) (holding "that

---

[7]    Such an application results in a higher offense level, but this is exactly what the guidelines intended.  *United States v. Pologruto*, 914 F.2d 67, 70 (5th Cir. 1990).

[8]    Section 3A1.2(b) provides for a three-level increase if:

"during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury."  *Id.*

9

adjustments for the victim's status are to be determined on the basis of all relevant conduct, as defined in U.S.S.G. § 1B1.3"). However, the "offense" referred to in section 3A1.2(b) refers to the base level offense used in calculating the defendant's sentence, and not necessarily the charged offense. *See United States v. Padilla*, 961 F.2d 322, 326-27 (2d Cir. 1992) (upholding the application of section 3A1.2(b) to the base level offense calculated from a cross reference, which was not the charged offense). Only if the charged offense and the base level offense are one and the same will a section 3A1.2(b) adjustment be assessed based on the relevant conduct surrounding the charged offense. Here, the base level offense was aggravated kidnapping so section 1B1.3 applies to the relevant conduct concerning the kidnapping.

Gonzales also argues that the death of the law enforcement official was not relevant conduct surrounding the aggravated kidnapping either because Madrigal's shooting of the officer was an "independent impulse" and was therefore not a reasonably foreseeable consequence of the kidnapping. However, the commentary to section 1B1.3 describes as relevant conduct for which the defendant is accountable a situation where a getaway driver in an armed bank robbery in which a teller is injured is convicted of the robbery only and yet "is accountable for the injury inflicted because he participated in concerted criminal conduct that he could reasonably foresee might result in the infliction of injury." U.S.S.G. § 1B1.3, comment. (n.1b). Here, the circumstances clearly demonstrate that injury to another person might well occur. Gonzales participated in the concerted criminal conduct of an

10

aggravated kidnapping, during which the victim was kidnapped at gunpoint and repeatedly threatened, and Gonzales himself threatened the victim with a gun. As with the driver in the foregoing example, although Gonzales did not cause the injury, the district court could properly find that it was reasonably foreseeable from the circumstances surrounding the offense that such an injury might well occur. Therefore, the district court did not err in applying section 3A1.2(b) to the base level offense of aggravated kidnapping.

*C. Double Jeopardy*

Finally, Gonzales argues that the district court should not have enhanced his base offense level under section 2A4.1(b)(3) because such an application violated the double jeopardy clause of the Fifth Amendment. He contends that by invoking the cross reference under section 2K2.1(c)(1), he was penalized for possessing a firearm during the kidnapping because his base offense level was increased from level twelve for the original charged offense of receipt of a firearm to level twenty-four for kidnapping. He argues that to increase his base offense level again by two levels under section 2A4.1(b)(3) for using a dangerous weapon during the kidnapping would amount to double counting.

We first note that even assuming that the application of the sentencing guidelines in this case could be accurately characterized as double counting, such an application would not necessarily violate the double jeopardy clause. Here there was a single prosecution, and in such a case, at least if the sentence is within the legislatively intended limits, "cumulative punishment is

11

always consistent with the double jeopardy clause, provided there is but a single trial." *United States v. Masters*, 978 F.2d 281, 285 (7th Cir. 1992) (Easterbrook, J.) (citing to *Missouri v. Hunter*, 103 S.Ct. 673 (1983); *Albernaz v. United States*, 101 S.Ct. 1137, 1144-45 (1981)).

The application of the guidelines here do not result in impermissible double counting. Not all double counting is prohibited by the guidelines. *See United States v. Patterson*, 947 F.2d 635, 637 (2nd Cir. 1991); *United States v. Rocha*, 916 F.2d 219, 243 (5th Cir. 1990). In *Rocha*, the defendants claimed that the district court had erred in increasing their base offense level for kidnapping by both the enhancement for a ransom demand and for the offense of extortion. They asserted that these two increases involved the same conduct and to apply both of them would result in double counting. *Id.* at 242-43. We rejected this contention noting that "the Sentencing Guidelines are explicit when double counting is forbidden." *Id.* at 243. Therefore, under the rule of statutory construction that "[t]he expression of one thing is the exclusion of another," we held that only if the guideline in question expressly forbids double counting, would such double counting be impermissible. *Id.* n.35. We then found that "there are no exceptions in section 2A4.1 to the enhancement of a defendant's base offense level for a ransom demand when the defendant's base offense level is enhanced for the facilitation of extortion, even if both specific offense characteristics involve the same conduct. We must presume therefore that the Sentencing Commission intended that a defendant's base offense level could be

12

enhanced under section 2A4.1 both for a ransom demand and again for the offense of extortion." *Id.* at 244. Similarly, here the sentencing guidelines do not expressly forbid the enhancement of Gonzales's base offense level for use of a weapon when his base offense level has already been enhanced for possessing a weapon in the commission of an offense. Therefore, the district court did not err in applying section 2A4.1(b)(3) after it had already applied section 2K2.1(c)(1) for essentially the same conduct. *See United States v. Vickers*, 891 F.2d 86, 88 (5th Cir. 1989) (holding that a court may enhance a defendant's sentence under more than one guideline section or subsection even though the two enhancements are for essentially the same conduct).

## Conclusion

Gonzales has failed to show any reversible error was committed by the district court below. Accordingly his conviction is

AFFIRMED.

13