**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

———————————————

No. 96-50798

———————————————

DWIGHT DWAYNE ADANANDUS,

                                        Petitioner-Appellant,

versus

GARY JOHNSON, Director,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION,

                                        Respondent-Appellee.

———————————————

Appeal from the United States District Court
For the Western District of Texas, San Antonio Division

(SA 95-CA-415)

———————————————

April 7, 1997

Before JOLLY, DUHÉ, and WIENER, Circuit Judges.

WIENER, Circuit Judge:[*]

Petitioner-Appellant Dwight Dwayne Adanandus, a Texas death

row inmate, appeals the district court's judgment denying his

———————————————

[*] Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

petition for a writ of habeas corpus.  The district court issued a certificate of appealability (COA) on October 18, 1996, granting Adanandus permission to appeal two issues:  (1) whether his trial counsel rendered ineffective assistance, and (2) whether the trial court violated Adanandus's constitutional rights by refusing to submit instructions on lesser included offenses to the jury.

Even if we were empowered to review Adanandus's habeas petition *de novo*, we would be inclined to affirm the conclusions reached by the district court in its lengthy, thorough, and thoughtful opinion, rejecting Adanandus's federal habeas petition. In it each issue was analyzed *de novo* pursuant to the pre-AEDPA standards for federal habeas review.  Moreover, given the deference that we are now obliged to afford state court findings of law and fact under the AEDPA's new federal habeas standards, the result is clear.  Both issues presented in the instant habeas appeal were addressed and rejected on their merits by the state court.  The state habeas court rejected Adanandus's ineffective assistance of counsel claim after conducting a full evidentiary hearing; and Adanandus's claim that the jury charge was improper was raised and rejected on direct appeal.  As those determinations were based on reasonable conclusions of law and fact, we affirm.

## I

## SUMMARY OF THE FACTS

On January 28, 1988, Adanandus shot and killed Vernon Hanan

2

while committing an armed robbery of a bank in San Antonio, Texas. The relevant events were recorded on videotape and have never been seriously disputed. Hanan entered the bank lobby just as Adanandus was making his exit. Hanan heard the bank teller's shouts for help and attempted to tackle Adanandus and prevent his escape. The two wrestled their way into the foyer of the bank before Adanandus pushed Hanan away, pointed his gun at Hanan, and fired the fatal shot.[1]

Adanandus was convicted of capital murder on May 12, 1989, and, after the jury answered "yes" to each of the three special issues presented to them at the punishment phase of the trial, the trial court sentenced Adanandus to death. Adanandus appealed, but the Texas Court of Criminal Appeals affirmed the conviction and sentence on June 16, 1993.[2] The United States Supreme Court denied writs on March 21, 1994.[3]

On September 7, 1994, Adanandus filed his initial application for state habeas corpus relief, which he amended on October 21. On

---

[1] As discussed below, Adanandus makes much in his brief about minor discrepancies in the trial testimony of several eyewitnesses to the shooting. Some witnesses testified that Hanan was flat on his back when Adanandus stood over him and fired, but other witnesses testified that Hanan was either standing or falling when the shot was fired. Those discrepancies are immaterial, however. There is no dispute that Adanandus fired the fatal bullet from a distance of at least two feet from Hanan, and there was no testimony or other evidence in the record to suggest that the shot might have been fired accidentally.

[2] Adanandus v. State, 866 S.W.2d 210 (Tex. Crim. App. 1993).

[3] Adanandus v. Texas, 114 S.Ct. 1338 (1994).

3

January 9, 1995, after conducting an evidentiary hearing, the state trial court issued findings of fact and conclusions of law and recommended that Adanandus's state habeas corpus application be denied. On February 21, 1995, the Texas Court of Criminal Appeals issued an unpublished per curiam opinion determining that the trial court's findings and conclusions were supported by the record, and denying Adanandus's habeas corpus application on the basis of those findings and conclusions.

Adanandus then filed his federal habeas petition, which the district court denied on August 27, 1996.[4] The district court then granted Adanandus a COA to appeal the two issues to us.[5]

## II
## DISCUSSION

### A. DISTRICT COURT'S POWER TO GRANT A COA

This issue was settled in Else v. Johnson,[6] in which a panel of this court held that a district court has authority to issue a COA in a § 2254 case, provided that the certificate properly identifies the particular issue or issues on which the petitioner has presented a substantial showing of the denial of a constitutional right. The COA issued by Judge Biery in the instant case appears to be proper in all respects. The district court was aware of the AEDPA's enactment and properly issued a COA rather

---

[4] Adanandus v. Johnson, 947 F.Supp. 1021 (N.D. Tex. 1996).

[5] Adanandus v. Johnson, 947 F.Supp. 1098 (N.D. Tex. 1996).

[6] -- F.3d --, 1997 WL 73845 (5th Cir. Feb. 20, 1997).

4

than a certificate of probable cause (CPC), as was formerly required. Adanandus raised 21 issues in the district court and then requested a COA to appeal three issues, of which the district court certified two. Thus, we accept that COA and proceed directly to the merits of the two certified issues.

B.   STANDARD OF REVIEW

As both issues raised by Adanandus in the instant habeas appeal were adjudicated on the merits in state court proceedings, we cannot grant Adanandus's petition for federal habeas corpus relief unless the state court adjudication resulted in a decision that (1) rested on a legal determination that was contrary to clearly established federal law as determined by the Supreme Court, (2) was based on an unreasonable determination of the facts in light of the evidence, or (3) rested on an unreasonable application of clearly established federal law to the facts surrounding the petitioner's claim.[7] Although we refer to the district court's opinion throughout this opinion, we must review the state court's disposition of these claims, and we must affirm the result reached by the state court if it is based on reasonable conclusions of law and fact.

C.   INEFFECTIVE ASSISTANCE OF COUNSEL

Adanandus claims that his trial counsel rendered ineffective

---

[7]   See Lockhart v. Johnson, 104 F.3d 54, 57 (5th Cir. 1997); Mata v. Johnson, 99 F.3d 1261, 1267-68 (5th Cir. 1996); Drinkard v. Johnson, 97 F.3d 751, 767 (5th Cir. 1996).

5

assistance in two respects: first, his failure, at both the guilt/innocence and punishment phases of the trial, to introduce as mitigating evidence the fact that Adanandus suffered a head injury during his adolescence; and second, that his trial attorney's political ambitions created a conflict of interest that undermined the effectiveness of his defense at trial.

1.   Mitigating Evidence -- the head injury

At the age of 13, Adanandus suffered a head injury in a horseback-riding accident, requiring a metal plate to be implanted in his head. Before trial, Adanandus's trial counsel submitted Adanandus to a medical examination by psychiatrist Dr. Raymond M. Costello. Dr. Costello included the following statement in his report:

> If a change in life style orientation from noncriminal to criminal can be related to the head trauma then it becomes at least plausible that despite his apparent intellectual intactness, his behavior may be at least a partial product of an injured brain and the social learning consequences immediately following the injury and compounded throughout the recuperative period. His ability to conform his behavior to the requirement of law would then be debatable. If a life style change predated the injury, the mitigating defense is less plausible. Defense may also have to rule out the possibility that there was no life style change and that his criminality was a simple process of his unique maturation into adulthood.

Adanandus argues that his trial counsel rendered ineffective assistance because, despite the information in Costello's report alluding to the possibility of linking Adanandus's head injury to his criminal behavior, the attorney failed to introduce such

evidence at trial.  Adanandus now proffers a new, somewhat more favorable psychological report, along with affidavits from his three sisters and his common-law wife stating that his behavior deteriorated after his head injury.

Under the two-pronged test articulated by the Supreme Court in Strickland v. Washington,[8] for Adanandus to prevail on a claim of ineffective assistance of counsel, he must show that (1) his trial counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his trial counsel's unprofessional errors, the result of the proceeding would have been different.[9]  The district court analyzed each of Adanandus's arguments at great length before determining, as did the state habeas court, that Adanandus failed to satisfy either prong of that test.[10]  With regard to the guilt/innocence stage of the trial, the attorney's tactical decision not to use the head injury as the basis of a defense was well within the realm of a reasonable trial strategy, particularly in light of the fact that the introduction of such evidence would have opened the door for the prosecution to introduce evidence concerning Adanandus's extensive criminal history, <u>much of which predated the head injury</u>.

---

[8]  466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[9]  Id. See also Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Sharp v. Johnson, -- F.3d --, 1997 WL 80440 (5th Cir. Feb. 26, 1997).

[10]  See Adanandus, 947 F.Supp. at 1035-1054.

7

With respect to the punishment phase of the trial, the district court correctly noted that evidence of Adanandus's head injury is a "double-edged sword" -- capable of persuading a jury that the defendant would be likely to commit additional dangerous acts in the future. Thus, it cannot be said that his attorney's decision not to introduce such evidence fell below an objective standard of reasonableness. In any event, as Adanandus was tried before the Supreme Court issued its seminal decision in Penry v. Lynaugh,[11] the jury instructions would not have permitted the jury to consider mitigating evidence as such when determining Adanandus's fate based on the three special issues.[12] Instead, as the district court noted, "the only way the jury could have given effect to any potentially mitigating evidence regarding petitioner's prior head injuries would have been through the deliberateness and provocation issues."[13] As there was nothing in Dr. Costello's report to indicate that Adanandus was unable to act rationally and deliberately, it does not appear that the trial

---

[11]   492 U.S. 302 (1989)(holding the Texas capital sentencing scheme unconstitutional, as applied to a defendant who had introduced evidence of his abusive childhood and mental retardation, because it did not permit the jury to give effect to such mitigating factors).

[12]   The three special issues that were submitted to the jury at the punishment phase of the trial asked whether 1) the defendant had acted deliberately in killing the decedent, 2) the defendant posed a continuing threat of violence to society, and 3) the defendant's action in killing the decedent was an unreasonable response to the decedent's conduct.

[13]   Adanandus, 947 F.Supp. at 1050.

attorney's decisions were either unreasonable or prejudicial to Adanandus.

The state habeas court determined that "the evidence [introduced at the evidentiary hearing]... indicates that the decisions made by counsel during trial concerning the [mitigating] evidence at issue were based on a thorough and complete investigation of the facts and law at the time of trial."  That determination is reasonable in light of the record evidence and cannot be disturbed.

2.   Conflict of Interest

Next, Adanandus argues that his trial counsel's "desire to obtain a high ranking prosecutorial position interfered with his duty to represent his client."   At the time of the trial, Adanandus's trial counsel was seeking an appointment to a United States Attorney position.  Counsel ultimately did not receive such an appointment, but, after the conclusion of the trial, he campaigned successfully for Bexar County District Attorney.

To establish an ineffective assistance claim based on a conflict of interest, a petitioner who failed to raise an objection at trial must demonstrate that an actual conflict of interest adversely affected his attorney's performance.[14]  The presumption of prejudice which Adanandus seeks to invoke through his assertion of a conflict of interest applies only when an "actual" conflict

---

[14]   See United States v Placante, 81 F.3d 555, 558 (5th Cir. 1996); Perillo v. Johnson, 79 F.3d 441, 447 (5th Cir. 1996).

exists.[15]  To establish an actual conflict, Adanandus must identify specific instances in the record that reflect that his counsel made a choice between possible alternative courses of action, and selected one that was helpful to his candidacy for U.S. Attorney or harmful to Adanandus's defense, or both.[16]

As the district court noted, the defense attorney's desire to be appointed U.S. Attorney "might have presented a potential conflict of interest, [but] petitioner has alleged no facts showing this potential conflict ever evolved into an actual conflict."[17] Adanandus argues that an actual conflict is demonstrated by the record of his trial counsel's punishment-phase jury argument, in which the lawyer expressed his personal approval of the death penalty and announced that he had previously sought the death penalty while prosecuting other defendants.  When that argument is viewed in context, however, we are convinced that the attorney's argument was a good one, and not the product of a conflict of interest:  Although the death penalty is an appropriate penalty in the right circumstances and in the right case, Adanandus does not deserve the death penalty.[18]

D.   THE JURY CHARGE

---

[15]   Perillo, 79 F.3d at 447.

[16]   Id.

[17]   Adanandus, 947 F.Supp. at 1055.

[18]   See Adanandus, 947 F.Supp. at 1056.

In the second issue certified to us by the district court, Adanandus argues that his constitutional rights were violated by the trial court's refusal to instruct the jury on the lesser-included offenses of felony murder and involuntary manslaughter. The law is clear that a capital defendant is constitutionally entitled to a lesser-included offense instruction if the evidence would permit a rational juror, given all the facts, to acquit the defendant of capital murder and convict him of the lesser included offense.[19]

On direct appeal, the Texas Court of Criminal Appeals held that Adanandus was not entitled to a jury instruction on either felony murder[20] or involuntary manslaughter[21] because no evidence was introduced at trial, by either the prosecution or the defense, to indicate that Adanandus might be guilty of a lesser offense than capital murder. In essence, both sides went for "all or nothing." On federal habeas review, the district court reached the same conclusion as did the state court, and so do we.

In the instant habeas appeal, Adanandus's brief draws

---

[19] <u>Hopper v. Evans</u>, 456 U.S. 605, 611-612 (1982); <u>Beck v. Alabama</u>, 447 U.S. 625, 637-38 (1980); <u>Cordova v. Lynaugh</u>, 838 F.2d 764, 767 (5th Cir.), <u>cert. denied</u>, 486 U.S. 1061 (1988).

[20] <u>Adanandus</u>, 866 S.W.2d at 231 ("We conclude there is *no* evidence upon which a jury could rationally find that appellant had the intent to rob, but not the intent to cause the death of the deceased.")(emphasis in original).

[21] <u>Id.</u> at 232 ("There is no evidence in the record from which a rational jury could infer that appellant's actions were merely reckless and were *not* intentional.")(emphasis in original).

11

attention to discrepancies in the testimony of eyewitnesses at trial in an attempt to show that a juror could have inferred somehow that Adanandus shot Hanan either accidentally or without an intent to kill.[22]  This position is baseless:  All trial witnesses were in agreement on the material issue, i.e., that Adanandus pointed the gun at Hanan and pulled the trigger.  There simply was no evidence at trial to suggest that Adanandus shot Vernon Hanan accidentally, or that he lacked specific intent to kill Hanan.

### III

### CONCLUSION

For the reasons stated herein, as well as those articulated by the district court, we affirm that court's denial of Adanandus's petition for habeas relief and vacate the stay of execution issued by the district court.

AFFIRMED.

---

[22]  See n.1, supra.