# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2022

Lyle W. Cayce
Clerk

No. 20-40648

United States of America,

*Plaintiff—Appellee*,

*versus*

David Keith Wills,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:17-CR-390-1

Before Davis, Elrod, and Haynes, *Circuit Judges*.

W. Eugene Davis, *Circuit Judge*:

A jury convicted David Keith Wills ("Wills") of sexually abusing a minor girl over a period of three years and conspiring to obstruct justice by destroying his laptop computer. Wills appeals, raising numerous arguments. We find no reversible error in the proceedings below and AFFIRM.

No. 20-40648

## I.   Background

Wills was indicted for (1) conspiracy to commit sex trafficking of a child (one count) in violation of 18 U.S.C. §§ 1591 and 1594, (2) sex trafficking of a child (seven counts) in violation of § 1591, (3) coercion and enticement of a minor (nine counts, two of which are "attempted") in violation of 18 U.S.C. § 2422(b), and (4) conspiracy to commit obstruction of justice (one count) in violation of 18 U.S.C. § 1512(c) and (k). The victim was Jane Doe ("Jane"), who was ten years old when the abuse began in 2012 and thirteen when it ended in 2015. The indictment further alleged that Jane's mother, Maria Losoya ("Losoya"), conspired with Wills to abuse Jane. Losoya initially denied the accusation, but she later recanted, pleaded guilty to sex trafficking Jane, and agreed to cooperate with the prosecution. Wills pleaded not guilty to all counts.

Before trial, Wills moved to dismiss the indictment on double jeopardy grounds, among others. The district court denied the motion, and we affirmed on interlocutory appeal.[1]

Wills's trial lasted eleven days. The jury heard testimony from forty-seven witnesses, including Jane, Losoya, and Wills. Losoya, who was awaiting sentencing at the time of trial, was an important witness for the prosecution.[2] She testified that, in exchange for money and gifts from Wills, she would deliver Jane to Wills whenever he requested—sometimes even checking her out of school—so he could rape her. Jane provided similar testimony. The Government also presented documentary evidence that corroborated Jane's and Losoya's testimonies.

---

[1] *United States v. Wills (Wills I)*, 742 F. App'x 887 (5th Cir. 2018) (unpublished).

[2] Losoya was later sentenced to fifteen years in prison for sex trafficking Jane.

No. 20-40648

The jury convicted Wills on all but one of the counts in the indictment.[3] Wills moved for a new trial, which the district court denied. The court sentenced Wills to life imprisonment for the sex crimes and five years for conspiring to commit obstruction of justice, to be served concurrently. The court also imposed a fine of $85,000 and required Wills to pay Jane $172,000 in restitution.

Wills timely appealed.

## II. Discussion

As mentioned, Wills presents numerous arguments in this appeal. Three of those are discussed below. Although we do not discuss Wills's other arguments, we have considered them and conclude they are unavailing.

### A. Double Jeopardy, Law of the Case

The Fifth Amendment's Double Jeopardy Clause states that no person may be "twice put in jeopardy" "for the same offence."[4] Wills argues that the federal prosecution violated double jeopardy because he was subjected to punitive pretrial bond conditions in state court before being tried and convicted in federal court. He further argues that the "dual-sovereignty" doctrine, which states that double jeopardy does not prohibit successive punishments for a single act that violates the respective laws of two sovereigns (e.g., state law and federal law),[5] does not apply here. We hold that law of the case bars these arguments.

---

[3] Wills was acquitted of one count of attempted coercion and enticement of a minor.

[4] U.S. Const. amend. V, cl. 2.

[5] *See Denezpi v. United States*, 142 S. Ct. 1838 (2022); *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019); *United States v. Moore*, 958 F.2d 646, 650 (5th Cir. 1992).

No. 20-40648

"The law of the case doctrine posits that ordinarily 'an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on subsequent appeal.'"[6] The doctrine covers issues decided expressly and by necessary implication.[7] We recognize three exceptions to law of the case: "(1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice."[8]

Prior to trial, Wills moved to dismiss the federal indictment on double jeopardy grounds. The district court denied the motion, and Wills took an interlocutory appeal. Another panel of this court held in 2018 that the dual-sovereignty doctrine applied and, consequently, no double jeopardy violation occurred.[9] Therefore, we will not revisit this issue unless one of the exceptions to the law-of-the-case doctrine applies.

Wills invokes only the second exception: intervening change of law by a controlling authority. He contends *Gamble v. United States*,[10] a Supreme Court decision that issued after *Wills I*, "makes clear that where a State has already punished an individual for a particular crime (here a violation of Texas Penal Code § 21.11), the Federal Government may not thereafter punish him for those same State 'offenses.'"

---

[6] *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004) (quoting *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)).

[7] *Id.* (citing *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001)).

[8] *Id.* at 320 n.3 (quoting *Matthews*, 312 F.3d at 657).

[9] *Wills I*, 742 F. App'x at 888 (citing *United States v. Angleton*, 314 F.3d 767, 771 (5th Cir. 2002)). *Wills I* assumed without deciding that the state bond conditions constituted "punishment" for double jeopardy purposes. *Id.* We do so again here.

[10] 139 S. Ct. at 1977.

No. 20-40648

*Gamble* is an intervening decision by a controlling authority, but it did not change the law. The Court re-affirmed the dual-sovereignty doctrine, citing, inter alia, 170 years of precedent.[11] Wills builds his argument on a passage in *Gamble* that acknowledged "the presence of a bar in a case in which the second trial is for a violation of the very statute whose violation by the same conduct has already been tried in the courts of another government."[12] But *Gamble* did not create this exception to the dual-sovereignty doctrine. It comes from a 1959 case that interpreted a decision from 1820.[13] Additionally, the *Gamble* Court was not called upon to apply this exception to the facts before it; it merely explained why the exception did not undermine the dual-sovereignty doctrine.[14] Thus, *Gamble* broke no new ground.

For these reasons, the law-of-the-case doctrine forecloses Wills's double jeopardy argument.

## B.      Financial Motive to Lie

Wills argues that his constitutional rights were violated when he was prohibited from discovering certain evidence that purportedly showed Jane's, Losoya's, and their attorney's financial motives to lie.

By way of background, Jane filed a civil lawsuit against Wills shortly after he was convicted. Richard Nunez ("Nunez") is the attorney who

---

[11] *Id.* at 1964.

[12] *Id.* at 1977 (quoting *Bartkus v. Illinois*, 359 U.S. 121, 130 (1959) (interpreting *Houston v. Moore*, 18 U.S. (5 Wheat.) 1 (1820))); *see also id.* ("In other words, [*Houston v. Moore*] . . . taught only that the law prohibits two sovereigns (in that case, Pennsylvania and the United States) from both trying an offense against one of them (the United States).").

[13] *See Bartkus*, 359 U.S. at 130 (citing *Houston*, 18 U.S.C. (5 Wheat.) at 28, 35).

[14] *Gamble*, 139 S. Ct. at 1977.

represented Jane in this lawsuit. Nunez also represented Losoya throughout the criminal proceedings, including when she pleaded guilty to sex trafficking and testified against Wills.

Wills was wealthy, and he asserts that the prospect of a substantial money judgment in a civil suit motivated Jane to falsely accuse him of sexual abuse. Nunez, who represented Jane on a contingent-fee basis, likely also expected to profit from Jane's lawsuit. This, Wills claims, created a conflict of interest between Nunez and his other client, Losoya; *to wit*: Nunez allegedly had a financial incentive in seeing Losoya plead guilty and testify for the prosecution, because a criminal conviction against Wills would help ensure a favorable outcome in the civil case. Thus, Wills surmises that Nunez encouraged Losoya to sacrifice her own interests, recant her prior denials, falsely admit to prostituting her own daughter (which carried a fifteen-year minimum sentence under federal sentencing guidelines), and provide incriminating testimony against Wills.

Wills claims that he attempted to develop this theory before trial by seeking discovery of any contract or contact Jane had with any civil lawyer, but the district court thwarted these efforts. He contends this prevented him from exposing Jane's and Losoya's motives in testifying against him and, consequently, violated fundamental fairness and deprived him of a meaningful opportunity to present a complete defense.

We review constitutional claims de novo.[15] "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"[16] For example, the Fifth Amendment's Due Process

---

[15] *United States v. Romero-Cruz*, 201 F.3d 374, 377 (5th Cir. 2000).

[16] *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

No. 20-40648

Clause requires that criminal defendants be treated with "fundamental fairness essential to the very concept of justice," and the Sixth Amendment's Compulsory Process Clause "ensures that criminal defendants have . . . the right to put before a jury evidence that might influence the determination of guilt."[17] In exercising these rights, however, a defendant "must comply with established rules of . . . evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."[18] The determination of whether the exclusion of evidence is of a constitutional dimension depends on the reason for and effect of the exclusion, and it typically includes an inquiry into the Federal Rules of Evidence.[19]

Wills knew before trial that Nunez represented Losoya, and he presented this fact to the jury. He cites two pretrial motions to support his claim that he repeatedly sought disclosure of any contract or contact Jane had with Nunez but "was prevented from exploring these issues."

---

[17] *United States v. Piper*, 912 F.3d 847, 854 (5th Cir. 2019) (first quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982), then, *Taylor v. Illinois*, 484 U.S. 400, 408 (1988)).

[18] *Id.* (quoting *United States v. John*, 597 F.3d 263, 276–77 (5th Cir. 2010)) (omission in original); *see also Taylor*, 484 U.S. at 410–11 ("The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case."); *United States v. Ramos*, 537 F.3d 439, 448 (5th Cir. 2008) ("The right to present a complete defense . . . 'is an essential attribute of the adversary system. However, this right is limited and must be weighed against the countervailing interests in the integrity of the adversary process . . . the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process.'" (quoting *United States v. Mizell*, 88 F.3d 288, 294 (5th Cir. 1996))).

[19] *United States v. Skelton*, 514 F.3d 433, 440 (5th Cir. 2008) (citing *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005)).

First, Wills filed a motion to compel the Government to produce approximately 100 discovery items, including "[t]he fact of any contact Jane Doe [or any person on her behalf] had with any civil lawyer" and "[a]ny and all statements made by Jane Doe, including but not limited to conversations with Richard Nunez." At a hearing on that motion, Wills's counsel represented that the parties had resolved most of the discovery issues. Wills's counsel also stated that the Government's attorney "was checking on whether Maria Losoya's lawyer had any communications with Jane Doe. He's just double checking on that for me; he doesn't believe there were any direct communications . . . ." The parties discussed several other matters at the hearing. Afterwards, the district court issued a minute entry stating that the parties "will continue to work together on remaining discovery issues" and "terminated" the motion.

Nothing in the record indicates that the Government possessed prior to or during trial any evidence or information that was responsive to these discovery requests. Obviously, the Government could not disclose evidence it did not have. Indeed, while Wills asserts that he "was not permitted to present" the jury with evidence that Nunez represented Jane, he does not argue on appeal that the Government suppressed, failed to disclose, or otherwise prevented him from obtaining this evidence.

Second, Wills filed an *ex parte* motion to issue under seal—and without notice to Jane—subpoenas duces tecum to Nunez, Losoya, and Jane's guardian that would require them to produce before trial any agreements for legal services between Jane and Nunez (or any other lawyer). Criminal Procedure Rule 17(c)(3) requires that a victim be given notice of a subpoena that seeks production of the victim's personal or confidential

information, unless "exceptional circumstances" are present.[20] The district court found there were no "exceptional circumstances" and declined to issue these subpoenas. At Wills's request, the district court gave him two weeks to file additional briefing on whether "exceptional circumstances" were present. However, Wills did not file additional briefing.

Wills does not argue on appeal that the district court erroneously interpreted Rule 17(c)(3), nor does he dispute that he failed to file additional briefing despite asking for and receiving the opportunity to do so. Furthermore, the district court did not prohibit all discovery of this topic; it merely refused to issue these subpoenas without giving notice to Jane. Wills does not explain why he could not provide this notice. It appears he simply chose to abandon his effort to discover this evidence before trial.

In short, these two events do not establish that Wills was denied a "meaningful opportunity" to present a complete defense. We further note that both Losoya and Jane testified at trial, and Wills does not argue that the district court prohibited him from questioning them about Nunez's representation or potential civil litigation. Nor does Wills assert that he was prohibited from calling Nunez or Jane's guardian to testify about this issue.

Wills also contends that the district court erred by refusing to grant him a new trial based on newly discovered evidence. We hold that Wills waived this argument by failing to adequately brief it.

Wills learned after trial that Jane (through her guardian) hired Nunez to represent her in the civil case against Wills. The representation agreement is dated October 8, 2019, the same date the jury convicted Wills. Nine days later, on October 17, 2019, Nunez filed on Jane's behalf the civil case against

---

[20] FED. R. CRIM. P. 17(c)(3).

Wills. Wills moved for a new trial, arguing, inter alia, that Jane's lawsuit and her representation agreement with Nunez constitute newly discovered evidence of Jane's and Losoya's motives to lie. The district court rejected this argument because two of the five elements of the "*Berry* rule" were lacking.[21]

Wills's opening brief on appeal states in conclusory fashion that the district court erred when it denied this aspect of his motion for a new trial. He does not mention the *Berry* rule, much less explain why or how the district court's application of that rule was incorrect. Consequently, Wills waived any argument that the district court erred when it denied this aspect of his motion for new trial.[22]

### C.    Wills's Medical Records

Wills testified at trial that he was diagnosed with herpes in 2006, six years before the abuse started. However, the district court excluded medical records from South Africa confirming this diagnosis because Wills failed to produce them despite the Government's specific requests prior to and during trial. Wills argues that excluding this evidence deprived him of a meaningful

---

[21] *See generally United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004) ("As a general rule, there are five prerequisites (typically referred to as the *Berry* rule) that must be met to justify a new trial on the ground of newly discovered evidence. The defendant must prove that (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal." (footnote and citations omitted)). The district court held that Wills failed to establish the third and fifth elements.

[22] *See, e.g.*, *United States v. Hoffman*, 901 F.3d 523, 552 n.16 (5th Cir. 2018) ("Failure on appeal to adequately brief an issue waives it."); *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992) (merely asserting in appellate brief that evidence was insufficient to convict without providing any argument to support the contention renders the issue abandoned).

opportunity to present a complete defense because the medical records showed that he carried a highly communicable sexually transmitted disease that was not detected in Jane by the SANE (sexual assault nurse examiner) examination.[23] He further claims that Criminal Procedure Rule 16(b), which governs a defendant's reciprocal discovery obligations, did not require him to produce these records until the day he actually testified.

As discussed above, the right to a meaningful opportunity to present a complete defense is not limitless. The defendant must, for example, "comply with established rules of . . . evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."[24]

Rule 16(a) gives a criminal defendant the option to demand that the Government produce certain categories of documents before trial.[25] When a defendant avails himself of this option, it triggers a reciprocal right in the prosecution to request the same categories of documents that the defendant "intends to use" in his case-in-chief.[26] There is no dispute that Wills sought and received discovery from the Government and the Government specifically requested his medical records before trial. Wills argues only that he did not "intend to use" these records in his case-in-chief until he decided to waive his Fifth Amendment right to silence and testify at trial, and he did not make that decision until after the Government presented its case. Thus, Wills claims he was under no obligation to produce these documents until the day he determined he would, and did, testify.

---

[23] The Government is quick to point out that the SANE exam did not actually test Jane for herpes.

[24] *Piper*, 912 F.3d at 854 (quoting *John*, 597 F.3d at 276–77 (omission in original)).

[25] Fed. R. Crim. P. 16(a)(1)(E)–(F).

[26] Fed. R. Crim. P. 16(b)(1)(A)(ii), (B)(ii).

Several district courts have rejected this argument.[27] Those courts reasoned that the privilege against self-incrimination does not exempt a defendant from his reciprocal discovery obligation; a defendant may not avail himself of discovery from the Government and then condition his reciprocal compliance on his decision whether to testify.[28] We agree. Accordingly, we hold that Wills violated his reciprocal discovery obligation by not timely producing the South African medical records.

Arguing in the alternative, Wills contends that even if he did violate Rule 16(b), our decision in *United States v. Davis*[29] holds that the Sixth Amendment forbids the exclusion of otherwise admissible evidence solely as a sanction to enforce the discovery rules or orders. We rejected a nearly identical argument in *United States v. Lundy*.[30] There we cited the Supreme Court's intervening decision in *Taylor v. Illinois* for the proposition that there are instances where preclusion is an appropriate remedy.[31] In other words, *Lundy* recognized that *Taylor* abrogated *Davis*'s holding that the Sixth Amendment prohibits exclusion for discovery violations.[32] Furthermore, *Lundy* upheld the district court's decision to exclude the defendant's expert

---

[27] *United States v. Huntress*, No. 13-CV-199S, 2015 WL 631976, at *33 (W.D.N.Y. Feb. 13, 2015); *United States v. Seldon*, No. 2:07-CR-0135, 2008 WL 11384195, at *2 (D. Nev. Oct. 20, 2008), *aff'd*, 462 F. App'x 735 (9th Cir. 2011) (unpublished); *United States v. Warner*, No. 02-CR-506, 2005 WL 2367769, at *13 (N.D. Ill. Sept. 23, 2005), *aff'd*, 498 F.3d 666 (7th Cir. 2007); *United States v. Ryan*, 448 F. Supp. 810, 811 (S.D.N.Y.), *aff'd*, 594 F.2d 853 (2d Cir. 1978) (unpublished table decision).

[28] *See, e.g.*, *Seldon*, 2008 WL 11384195, at *2 (citing *Ryan*, 448 F. Supp. at 811).

[29] 639 F.2d 239, 243 (5th Cir. Unit B Mar. 1981).

[30] 676 F.3d 444, 451 (5th Cir. 2012).

[31] *Id.* (citing *Taylor*, 484 U.S. at 413).

[32] *Id.* at 451–52. Indeed, *Taylor* "rejected petitioner's argument that a preclusion sanction is never appropriate no matter how serious the defendant's discovery violation may be." 484 U.S. at 416.

witness—a more severe remedy than excluding a single document that is cumulative of the witness's testimony—after the defendant failed to provide the Government with a summary of the expert's testimony as required under Rule 16(b)(1)(C).[33]

We review a district court's decision to exclude evidence as a sanction for violating a discovery rule or pretrial order for abuse of discretion.[34] Aside from arguing that exclusion is never appropriate, Wills does not contend that the district court abused its discretion when it excluded his medical records. Consequently, we treat the issue as waived and leave undisturbed the district court's decision to exclude these documents.[35]

### D.    Wills's Remaining Arguments

Wills raises numerous other issues on appeal, which are listed in the margin.[36] We have carefully considered the parties' briefs, the record, and the applicable law. We find for essentially the reasons expressed by the

---

[33] 676 F.3d at 451–52; *see also United States v. Chaparro-Luna*, 790 F. App'x 560, 566 (5th Cir. 2019) (unpublished) (same).

[34] *United States v. Garza*, 448 F.3d 294, 299–300 (5th Cir. 2006); *see also Taylor*, 484 U.S. at 414–15 (providing a non-exhaustive list of factors to guide a district court's "exercise of discretion" whether to exclude evidence for a discovery violation).

[35] *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal. . . . A party who inadequately briefs an issue is considered to have abandoned the claim." (emphasis in original; citations omitted)).

[36] Wills's remaining arguments concern: (1) alleged juror misconduct or bias, (2) an incomplete trial transcript, (3) destruction of raw data extracted from Losoya's cell phone, (4) admission of expert testimony regarding cell site location information, (5) the search warrants used to obtain Wills's emails and phone records, (6) the Government's alleged intrusion into the attorney-client relationship stemming from the collection and dissemination of Wills's handwritten notes, (7) the sufficiency of the jury instructions and indictment, (8) sufficiency of the evidence regarding the conviction for conspiracy to commit obstruction of justice, (9) alleged prosecutorial misconduct, and (10) exclusion of a laptop computer.

No. 20-40648

district court and the Government that none of Wills's remaining arguments have merit. We forego discussion of these issues.

### III.   CONCLUSION

The judgment of the district court is AFFIRMED.