# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2024

Lyle W. Cayce
Clerk

No. 23-10194

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

LEROY HAROLD WHITE, JR.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CR-276-2

Before WILSON, DOUGLAS, *Circuit Judges*, and VITTER, *District Judge*.[*]
PER CURIAM:[†]

Following an altercation that culminated in a shooting between James Johnson and Leroy Harold White, Jr., in which White fired a gun near Tyrone Cornelius's head, White pleaded guilty to being a felon in possession and was sentenced to 120 months' imprisonment. White appeals his sentence on three grounds: (1) the district court improperly applied U.S.S.G.

---

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

[†] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

§ 2A2.1(a)(2)—the guideline for attempted murder—based on information external to the indictment and factual resume and the erroneous findings that he acted with the specific intent to kill Cornelius and did not act in self-defense, (2) the application of § 2A2.1(a)(2) based on judicial factfinding violated his Sixth Amendment right to a jury, and (3) his sentence is substantively unreasonable. We AFFIRM White's sentence.

I

On September 14, 2022, a federal grand jury returned a two-count indictment against Leroy Harold White, Jr., and James Edward Johnson, charging each with one count of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). As to White, the indictment alleged that on July 29, 2022, he possessed a Smith and Wesson, model SD40VE, .40 caliber pistol. White pleaded guilty, without a plea agreement, before a magistrate judge, and his plea was accepted by the district court. In the factual resume supporting his plea, White admitted that he possessed the firearm, as alleged, while he was working at JJ's Corner Lounge in Arlington, Texas. He further admitted that he fired the weapon one time during an altercation.

In the presentence investigation report ("PSR"), the probation officer included additional details about the July 29 incident. According to the PSR, while White and Victor Pearson were working as security guards at JJ's Corner Lounge, White asked Johnson to leave because he was in violation of the bar's dress code. Johnson refused, and an argument ensued between White, Johnson, and another patron, Tyrone Cornelius. White struck Cornelius in the face with his elbow, after which Cornelius punched White multiple times. White then "pulled out a pistol from his waistband, pointed it toward Cornelius's head, and attempted to fire a shot; however, the firearm experienced a malfunction and did not fire a bullet." Next,

Johnson pulled out his own handgun and fired a shot toward a group of people who had just entered the club, striking one of them in the foot. White then struck Johnson in the head using his left hand, and Johnson responded by firing multiple shots at White.

The instant appeal stems from the district court's interpretation of cross-reference provision U.S.S.G. § 2K2.1(c)(1)(A). Section 2K2.1(c)(1)(A) provides that if the defendant "used or possessed any firearm . . . cited in the offense of conviction in connection with the commission or attempted commission of another offense," or "possessed . . . a firearm cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense," then § 2X1.1 should be applied with respect to the other offense "if the resulting offense level is greater than that determined" under the guideline for possession of a firearm by a felon. Under § 2X1.1, the base offense level is determined "from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a).

Pursuant to §§ 2K2.1(c)(1)(A) and 2X1.1, the probation officer determined that White's substantive offense was assault with intent to commit murder and applied § 2A2.1 to establish White's base offense level. Under § 2A2.1, the base offense level is "33, if the object of the offense would have constituted first degree murder," or "27, otherwise." U.S.S.G. § 2A2.1. The probation officer found that White's conduct warranted a base offense level of 27 pursuant to § 2A2.1(a)(2) and, after subtracting three levels for acceptance of responsibility, computed a total offense level of 24. Based on the total offense level, and White's criminal history category of II, the Guidelines imprisonment range was 57 to 71 months. However, due to concerns that White's criminal history and likelihood to recidivate were

underrepresented, the probation officer recommended an upward departure pursuant to § 4A1.3(a)(1).

White filed nine written objections to the PSR, arguing, in relevant part, that the offense level contained in the PSR was derived from the "baseless assertion that [he] attempted murder" and the PSR's description of the incident was incorrect. He offered his version of the incident and submitted a firearms report, two police reports, and a surveillance video from JJ's Corner Lounge.

According to White, after he asked Cornelius to leave, Cornelius put down his drink, hiked up his pants, stuck his finger in White's face, and threatened to kill White and Pearson. Citing the police reports, White alleged that Pearson reported the verbal threats to police. White also claimed that Johnson shouted threats in his face and shoved another security guard with an elbow. According to White, it was after all of these aggressive actions that he struck Cornelius. White further asserted that Cornelius, a much larger and younger man than White, pinned him against a wall and pummeled him before White ever drew his weapon. White alleged that he then fired "a warning shot to protect himself" and did not pursue any conflict with Cornelius after the shot. White explained that, after Cornelius stopped assaulting him, he attempted to help his co-worker, Pearson, who was being assaulted by Johnson. At that point, White claimed that Johnson pulled out his own gun and shot White. White asserted that he attempted to fire back, but his gun jammed and did not fire.

In response to White's objections, the Government argued that White was "the initiator of violence" because he struck Cornelius with his elbow after a verbal disagreement. Citing the surveillance video and a still shot taken from that video, the Government asserted that White did not fire a warning shot, but instead aimed his weapon at Cornelius's head and fired a

shot, though the gun malfunctioned. The Government further asserted that White continued to be the aggressor because after the first shots were fired, he attempted to fire his gun again.

At the sentencing hearing, White argued that there was no evidence that he wanted to kill Cornelius because that theory hinged on the faulty idea that White's gun malfunctioned while he was fighting with Cornelius. White contended that the surveillance video showed that his gun malfunctioned after he fired his warning shot, when Johnson had his gun pointed at White, and did not show White trying to clear a gun jam before that point. As to the still photo of White aiming his gun at Cornelius's head, White argued that this is also proof of a lack of intent to kill Cornelius because the still photo does not show him pulling the trigger. White also disputed whether he initiated the incident, as Cornelius and Johnson had threatened to kill him and Pearson.

The Government responded that White was the first one to pull out a gun and the first one to fire it. The Government further argued that because he fired his gun "millimeters from another individual's head," White had an intent to kill and a reckless disregard for the life of that person.

The district court ultimately overruled White's objections, concluding that the application of § 2A2.1(a)(2) was appropriate based on its review of the surveillance video. In support of this decision, the court noted that it did not believe that the evidence showed that White's actions were justified. The court then adopted the PSR's factual findings and guidelines calculations.

The Government next argued at the sentencing hearing that White's sentence should be similar to the one that Johnson received, despite the difference in their guideline calculations. In particular, the Government noted that White's criminal history computation was lower than Johnson's

because White had a previous murder conviction that received zero points. The Government emphasized that White had a long history of violent offenses, including multiple assaults causing bodily injury.

White requested a downward variance, specifically, a sixteen-month prison term. His counsel explained that some of his criminal history was not scored under the Guidelines because those offenses occurred long ago, and asserted that he had matured since then. White also spoke on his own behalf, explaining that he reacted the way he did during the incident because he believed that his life was in danger, but that he "didn't mean to make this chain reaction go that far."

After hearing the parties' arguments, the district court determined that an upward variance was warranted and sentenced White to 120 months' imprisonment, plus three years of supervised release. White timely filed a notice of appeal. Fed. R. App. P. 4(b)(A)(i). His appeal was held in abeyance pending our decision in *United States v. Santiago*, 96 F.4th 834 (5th Cir. 2024), another case involving the application of § 2A2.1. After the mandate issued in *Santiago*, the parties submitted supplemental briefing pursuant to a court directive.

## II

## A

White argues we should review de novo the district court's application of § 2A2.1(a)(2) because the facts in the indictment and factual resume supporting his plea do not show that he committed attempted murder. The Government argues that clear error is appropriate because the thrust of White's argument is that the facts were insufficient to show that he intended to kill Cornelius.

No. 23-10194

We review a district court's factual findings during sentencing for clear error and its interpretation of the Sentencing Guidelines, including its application of the cross-reference provisions of § 2K2.1, de novo. *United States v. Hicks*, 389 F.3d 514, 529 (5th Cir. 2004). To the extent White argues the district court improperly applied § 2A2.1 to calculate his offense level because it did so based on facts outside the indictment and factual resume, de novo review applies. However, the factual determinations the district court made as to White's intent to kill and self-defense are subject to clear error review. Under this standard, "[a] factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Barfield*, 941 F.3d 757, 761 (5th Cir. 2019) (internal quotation marks and citation omitted).

B

As an initial matter, White cites *United States v. Principe*, 203 F.3d 849 (5th Cir. 2000), for the proposition that the application of § 2A2.1(a)(2) pursuant to § 2K2.1's cross-reference provision was improper because it was based on information not included in the indictment and the factual resume supporting his plea. In support of this argument, White asserts that there is no information contained in the pleading documents to support the allegation that he possessed the specific intent to kill Cornelius. White also contends that there is no information to negate any of the potential justifications for firing the weapon into the air during the fight.[1] The Government did not respond to this argument.

---

[1] At oral argument, White argued for the first time that even if specific intent to kill were established, the district court erred in applying § 2A2.1(a)(2) because White's substantive offense would be attempted voluntary manslaughter, not attempted murder. We have "repeatedly and emphatically held [that] we cannot and will not consider arguments raised for the first time at oral argument." *Jackson v. Gautreaux*, 3 F.4th 182, 188 n.* (5th Cir. 2021). Though White contends he preserved the argument in a sentencing

7

"[T]he selection of the applicable guideline begins with reference to, first, the count of conviction, and, then, the Statutory Index." *United States v. Stanford*, 883 F.3d 500, 505 (5th Cir. 2018). "Where . . . the Statutory Index provides more than one applicable guideline for a statute, the Guidelines instruct district courts to 'determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted.'" *Id.* at 505–06 (quoting U.S.S.G. § 1B1.2(a) & cmt. (n.1)). Cross-reference provisions, however, are not determined solely by the conduct charged in the count of conviction. Rather, U.S.S.G. § 1B1.3(a) "requires that relevant conduct be applied to determine the cross references 'unless otherwise specified.'" *United States v. Gonzales*, 996 F.2d 88, 91 (5th Cir. 1993) (quoting § 1B1.3(a)). "Relevant conduct" includes "all acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction," "all harm that resulted from . . . and . . . that was the object of such acts and omissions," and "any other information specified in the applicable guideline." U.S.S.G. § 1B1.3(a).

Section 2K2.1 is the sole sentencing guideline in the Statutory Index for 18 U.S.C. § 922(g), and the district court applied § 2A2.1(a)(2) pursuant to § 2K2.1's cross-reference provision, § 2K2.1(c)(1). Because

---

memorandum submitted to the district court, we disagree. White's sentencing memorandum mentions manslaughter one time as part of a citation to *United States v. Jackson*, 351 F. Supp. 2d 108 (S.D.N.Y. 2004), that discussed the possibility of reducing attempted murder to manslaughter where intent to kill can be established and self-defense is unavailable. The rest of the sentencing memorandum focuses only on the argument that White lacked the intent to kill Cornelius. "Citing cases that may contain a useful argument is simply inadequate to preserve that argument for appeal; 'to be preserved, an argument must be pressed, and not merely intimated.'" *In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993) (quoting *Hays v. Sony Corp.*, 847 F.2d 412, 420 (7th Cir. 1988)). Thus, White "waived this argument by raising it for the first time at oral argument." *United States v. Richard*, 775 F.3d 287, 294 n.1 (5th Cir. 2014).

§ 2K2.1(c)(1) is a cross-reference provision, its applicability depends on White's "relevant conduct," unless the provision specifies otherwise. *See Gonzales*, 996 F.2d at 91; U.S.S.G. § 1B1.3(a). While some cross-reference provisions specify a scope of consideration narrower than relevant conduct, *see, e.g.*, § 2B1.1(c)(3), § 2K2.1(c)(1)(A) specifies a broader scope. The only limitation on the conduct that may trigger its application is that the conduct involve the firearm "cited in the offense of conviction."[2] § 2K2.1(c)(1)(A). Here, there is no dispute that the firearm cited in the offense of conviction is the firearm involved in the offense governed by the cross-reference provision. Thus, the district court properly relied on additional facts about the July 29 incident to apply § 2A2.1(a)(2) pursuant to § 2K2.1's cross-reference provision.[3]

## C

Alternatively, White argues that even if the district court were permitted to consider information external to the indictment and factual resume, the court still erred because such information does not show that he had a specific intent to kill Cornelius. White further contends that the evidence shows he acted in self-defense. The Government responds that § 2A2.1(a)(2) can be applied without a showing of a specific intent to kill and,

---

[2] *See Gonzales*, 996 F.2d at 92 ("[T]he broad language of section 2K2.1(c)(1), particularly its unlimited references to 'another offense,' indicates that it is not restricted to offenses which would be relevant conduct but embraces all illegal conduct performed or intended by [a] defendant concerning a firearm involved in the charged offense.") (quoting U.S.S.G. § 2K2.1(c)(1)).

[3] Even if the district court were limited to considering only "relevant conduct," it likely properly considered information beyond the indictment and factual resume to apply § 2A2.1(a)(2), as White does not dispute that such information concerns acts he committed during the offense for which he was convicted. *See* § 1B1.3(a) (defining "relevant conduct" to include "all acts and omissions committed, . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction").

regardless, the evidence presented shows that White acted with the specific intent to kill Cornelius.  The Government also argues that the district court correctly rejected White's self-defense argument.

We need not reach the question of whether § 2A2.1(a)(2) requires a showing of specific intent because, on clear error review, the district court did not err in finding that White had an intent to kill Cornelius.

"Intent is often established by inference from circumstantial evidence." *United States v. Conlan*, 786 F.3d 380, 385 (5th Cir. 2015).  Citing the Sixth Circuit and an unpublished decision of our court, the Government argues that White had the specific intent to kill Cornelius because he pointed his firearm directly at Cornelius's head and then pulled the trigger.  White does not contest that he had the gun pointed at Cornelius's head before he pulled the trigger, but he argues that the video shows that he removed the gun from Cornelius's temple and pointed it in the air before firing it.[4]  White further argues that the cases cited by the Government are distinguishable because they involved shooting a gun at a victim or in a victim's direction.

While it may be possible to infer White's version of the facts, "[o]n clear-error review, we accept the 'trial court's factual findings if they are plausible in light of the record, even though we might have weighed the evidence differently.'" *Santiago*, 96 F.4th at 849 (quoting *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1116 (5th Cir. 2021)).  Because the video evidence at sentencing showed White place the gun to Cornelius' head before firing a shot next to Cornelius's head in the midst of a rapidly evolving fistfight, the record also plausibly supports the district court's factual finding

---

[4] White appears to be referring to the surveillance footage time-stamped as 2:56-3:03, where he fired a shot next to Cornelius's head immediately after he pointed the gun at Cornelius's head.

that while White had his gun pointed at Cornelius's head, the gun malfunctioned when he tried to shoot. Though there is no binding circuit precedent regarding intent under these circumstances,[5] the Sixth Circuit has held that pointing a gun at someone and firing it shows a specific intent to kill. *See United States v. Grant*, 15 F.4th 452, 458 (6th Cir. 2021) (finding no clear error in district court's determination that defendant had a specific intent to kill where defendant aimed gun in victim's direction and fired); *see also United States v. Howell*, 17 F.4th 673, 690 (6th Cir. 2021) (the Sixth Circuit "has concluded that specific intent to kill could be inferred from a defendant firing a gun aimed at an individual" (internal quotation marks and citations omitted)). We agree and therefore conclude that the district court did not err in overruling White's objection to the application of § 2A2.1(a)(2) based on the argument that he lacked the specific intent to kill Cornelius. To the extent White argues that the evidence shows he only shot into the air rather than at Cornelius when the gun was pressed to his head, he asks that we re-weigh the evidence, which we decline to do on clear error review. *See Santiago*, 96 F.4th 849.

White also argues that the evidence does not support the district court's application of § 2A2.1(a)(2) because his conduct was justified as an act of self-defense. At sentencing, the district court stated that it did not

---

[5] In an unpublished opinion, we held there was "no evidence at trial to suggest that [the defendant] shot [the victim accidentally], or that he lacked specific intent to kill him" where "[a]ll witnesses were in agreement . . . that [he] pointed the gun at [the victim] and pulled the trigger." *Adanandus v. Johnson*, 114 F.3d 1181, 1997 WL 256743, at *5 (5th Cir. Apr. 7, 1997). More recently, in *United States v. Bell*, another unpublished opinion, we rejected the argument that the district court erroneously applied § 2A2.1(a)(1) without a showing of a specific intent to kill because the defendant did "not dispute that . . . he began shooting a handgun in [his girlfriend's] general direction" and "[s]everal shots hit the vehicle [his] girlfriend was hiding behind." No. 23-50168, 2023 WL 7549508, at *1 (5th Cir. Nov. 13, 2023).

believe the evidence showed that White's actions were justified. Since then, we held in *Santiago* that a district court should not cross-reference § 2A2.1 without considering whether the defendant's conduct was justified as self-defense because "[s]elf-defense is an affirmative defense to a charge of murder under [18 U.S.C.] § 1111 that negates the[] elements of criminal behavior." 96 F.4th at 849–50 (internal quotation marks and citations omitted). *Santiago* also articulated a framework for analyzing this issue. *Id.* at 850. While the initial burden of production rests on the defendant asserting self-defense, once the defendant has met that burden, the Government must provide proof to negate the self-defense claim. *Id.* at 849–50.

To meet his burden of production under this framework, White must present evidence that:

> (1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) he had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and (4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*Id.* at 850 (citations omitted). In *Santiago*, the defendant met his burden of production, but the district court did not seek, and the Government never provided, proof to rebut his self-defense claim. Thus, we found the district court clearly erred in applying § 2A2.1(a)(2). *Id.*

White argues that the district court failed to address his self-defense claim for which he met his burden of production. As an initial matter, White

argues the district court's statement that the evidence does not show his conduct was justified is too vague to constitute a ruling on his self-defense claim and misconstrues the burden-shifting framework set forth in *Santiago*. With respect to the first *Santiago* element, White argues Pearson reported to police that Cornelius and Johnson verbally threatened to kill both Pearson and him, and the video shows Cornelius putting down his drink, hiking up his pants, getting very close to White's face and speaking in a very agitated manner. Regarding the second element, he argues that he was simply trying to do his job as the bouncer for the business. White argues that he also satisfied the third element because Cornelius made it clear he was willing to kill White and Pearson and was acting very aggressively. Finally, with respect to the fourth element, White argues there was a "direct causal relationship between the criminal action taken and the avoidance of the threatened harm," *Santiago*, 96 F.4th at 850, because as soon as the shot was fired, Cornelius disengaged and fled the scene.

In response, the Government argues that the district court's statement that White's conduct was not justified was a finding the district court made in direct response to the self-defense claim White raised and the video evidence presented at sentencing. The Government also argues that White failed to satisfy the second *Santiago* element because he provoked and then repeatedly escalated the attack in this case. Specifically, the Government contends that White escalated the verbal confrontation to a physical one by violently striking Cornelius twice in the face with his elbow, and again escalated the physical encounter by taking a loaded gun from his waistband, pressing it against Cornelius's head, and pulling the trigger. The Government further argues that it rebutted White's self-defense claim by directing the district court to the surveillance video, which shows White was "the initiator of the violence," and continued to be the aggressor after the first shots were fired.

No. 23-10194

The second *Santiago* element is "akin to a prohibition against 'provok[ing] a fight and then rely[ing] on a claim of self-defense when that provocation results in a counterattack.'" 96 F.4th at 850 (quoting *United States v. Branch*, 91 F.3d 699, 717 (5th Cir. 1996)). Here, the district court was presented with evidence suggesting that both White and Cornelius provoked the fight. On one hand, White offered police reports showing that Pearson told police Cornelius and Johnson threatened to kill White and Pearson. On the other hand, the surveillance video shows White throwing the first punch, to which Cornelius responded by punching him back repeatedly. "The clear error standard of review is a deferential one." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011). This court will only find clear error where "a review of all the evidence leaves us with the definite and firm conviction that a mistake has been committed." *Barfield*, 941 F.3d at 761–62. Based on the evidence presented to the district court, it is plausible that White provoked the fight and then relied on a claim of self-defense when Cornelius responded by punching back. Thus, we decline to vacate the district court judgment on grounds that it applied § 2A2.1(a)(2) without considering whether White acted in self-defense.[6] *See Santiago*, 96 F.4th at 850 n.31 (clear error review only requires that "the record, . . . in some way, support the court's declination of [self-defense] if the defendant raises it").

## III

We next consider White's argument that the district court's application of § 2A2.1(a)(2) based on judicial factfinding violated White's

---

[6] Because the record plausibly supports a finding that White failed to meet his burden of production under *Santiago*, we need not address the Government's alternative argument that it rebutted White's self-defense claim.

14

Sixth Amendment right to a jury.  We review constitutional claims de novo. *United Stats v. Wills*, 40 F.4th 330, 335 (5th Cir. 2022) (citation omitted).

White contends the extraneous allegation of attempted murder was used to enhance his sentence based on one probation officer's opinion that the allegation was proven by a preponderance of the evidence, not beyond a reasonable doubt.  The Government responds that White's argument is foreclosed because, at sentencing, facts relevant to the determination of the guideline range are decided by a preponderance of the evidence.  The Government further argues that because White was sentenced within the statutory maximum term, judicial factfinding by a preponderance of the evidence, rather than beyond a reasonable doubt, does not run afoul of the Sixth Amendment.

Binding precedent leads us to agree with the Government.  We have repeatedly rejected Sixth Amendment challenges to judicial factfinding by a preponderance of the evidence at sentencing where the defendant's sentence ultimately falls within the statutory maximum term.  *See United States v. Shah*, 95 F.4th 328, 385 (5th Cir. 2024); *United States v. Hebert*, 813 F.3d 551, 564 (5th Cir. 2015); *United States v. Hernandez*, 633 F.3d 370, 374–75 (5th Cir. 2011); *United States v. Setser*, 568 F.3d 482, 498 (5th Cir. 2009); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

Since June 25, 2022, violations of 18 U.S.C. § 922(g)(1) have a statutory maximum of fifteen years' imprisonment under § 924(a)(8).[7] White's sentence of 120 months, or ten years, falls below the statutory

---

[7] From December 21, 2018, through June 24, 2022, violations of § 922(g)(1) were penalized under § 924(a)(2) and carried a ten-year maximum term of imprisonment.  *See* 18 U.S.C. § 924(a)(2) (2019).

maximum. Thus, his Sixth Amendment challenge is foreclosed by our precedent.

## IV

## A

We now turn to White's challenge to the substantive reasonableness of his sentence. We consider a challenge to the substantive reasonableness of a sentence "under an abuse-of-discretion standard." *United States v. Coto-Mendoza*, 986 F.3d 583, 585 (5th Cir. 2021) (internal quotation marks and citation omitted). An abuse of discretion occurs where a sentence "unreasonably fails to reflect the [18 U.S.C. § 3553(a)] sentencing factors" because it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Nguyen*, 854 F.3d 276, 283 (5th Cir. 2017) (internal quotation marks and citations omitted).

Though a sentence within the guidelines range may be presumed reasonable, this court may not apply a presumption of unreasonableness to a sentence outside the guidelines range. *Id.*; *see also United States v. Khan*, 997 F.3d 242, 247 (5th Cir. 2021) ("The fact that this court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." (internal quotation marks and citation omitted)). Rather, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007). "Thus, a 'significant variance' from the sentencing guidelines is permitted where it is 'commensurate with the individualized, case-specific reasons provided by the district court.'" *Nguyen*, 854 F.3d at 283 (quoting *United States v. Diehl*, 775 F.3d 714, 724

(5th Cir. 2011)).[8]  However, the district court "is not required to provide a detailed explanation of its reasoning for each factor."  *United States v. Broussard*, 882 F.3d 104, 112 (5th Cir. 2018) (citation omitted).

B

White argues that his sentence is substantively unreasonable because (1) the district court's upward variance lacked sufficient individualized justification, as demonstrated by the district court's consideration of White's co-defendant's sentence; and (2) the district court should not have considered White's unscored criminal history.

The Government responds that the upward variance was supported by detailed reasons centered on the nature and circumstances of the offense, White's criminal history, and the need to avoid a sentencing disparity with White's co-defendant.  To the extent that White argues his co-defendant's sentence should not have been considered because he was less culpable, the Government contends this argument simply requests that the Court rebalance the statutory sentencing factors more in his favor.[9]

At sentencing, the district court considered the factors set forth in 18 U.S.C. § 3553(a) in determining White's sentence.  Specifically, the court based its upward variance on (1) the "dangerous" circumstances of White's

_____

[8] White cites *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006), for the assertion that the farther a sentence varies from the applicable guideline sentence, the more compelling the justification must be.  However, *Smith* made clear that "the [sentencing] court . . . need not engage in robotic incantations that each statutory factor has been considered."  *Id.* at 707.  Accordingly, a non-guideline sentence is subject to the same standard of review as a guideline sentence.  *Id.* at 708.

[9] The Government also argues that White's sentence is in the range of upward variances this court has previously upheld.  However, as explained above, the substantive reasonableness of a sentence turns on whether it is based on specific, individualized reasons, *Nguyen*, 854 F.3d at 283, not whether it is similar to variances in other cases.

offense; (2) his "unique personal background and circumstances"; (3) his "long criminal history of numerous violent crimes," several of which received zero criminal history points; (4) his "pattern of illegal activity throughout his life"; (5) the fact that he "has been afforded terms of probation and imprisonment [and] sustained multiple revocations"; and (6) the court's "belie[f] that this sentence [was] necessary to protect the public from further crimes of the defendant." The court also considered the disparity between White's sentence and that of his co-defendant, Johnson.

Though White's sentence of 120 months represents a significant upward variance from the guidelines range of 57 to 71 months, his arguments that the district court failed to make individualized and specific findings to support its upward variance are unavailing. Contrary to White's assertion, the district court's consideration of his co-defendant's sentence does not demonstrate a failure to support his sentence with specific findings. Indeed, § 3553 instructs district courts to consider sentencing disparities between co-defendants when imposing a sentence. 18 U.S.C. § 3553(a)(6).[10] With regard to whether the district court improperly considered White's unscored criminal history, White refers to the "Sentencing Commission's policy of allowing cases to age out." To the extent that White argues the district court's consideration of unscored criminal history constitutes a failure to give adequate weight to a policy by the Sentencing Commission, as required by § 3553(a)(5), White cites no authority for his position. Moreover, we have previously upheld sentences based on unscored criminal history. *See United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008) (affirming upward variance based in part on defendant's unscored criminal history, including seven prior deportations); *United States v. Smith*, 440 F.3d 704, 709

---

[10] White appears to concede this point in his brief.

No. 23-10194

(5th Cir, 2006) (affirming upward variance based in part on criminal history that had not been accounted for in guidelines-range calculations).

Given our "highly deferential" review for substantive reasonableness and the district court's stated reasons for White's sentence, the district court did not abuse its discretion in imposing the upward variance to White's sentence. *Diehl*, 775 F.3d at 724–25.

## V.

For the reasons explained above, we AFFIRM White's sentence.